993 So.2d 281 (2008)
STATE of Louisiana
v.
David RAMOS.
No. 2007 KA 1448.
Court of Appeal of Louisiana, First Circuit.
July 28, 2008.
*282 Doug Moreau, District Attorney, Dylan C. Alge, Assistant District Attorney, Baton Rouge, LA, for Appellant, State of Louisiana.
Bertha M. Hillman, Louisiana Appellate Project, Thibodaux, LA, for Defendant/Appellee, David Ramos.
Before CARTER, C.J., WHIPPLE, PARRO, KUHN, GUIDRY, PETTIGREW, DOWNING, GAIDRY, McDONALD, McCLENDON, HUGHES, and WELCH, JJ.
HUGHES, J.
In this appeal, the State of Louisiana challenges, on the basis of federal preemption by the "REAL ID Act,"[1] the granting of a motion to quash a bill of information, which charged the defendant with unlawful presence in this country in violation of LSA-R.S. 14:100.13. For the reasons that follow, we reverse the trial court's ruling granting the motion to quash and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY[2]
On September 17, 2006 Louisiana State Trooper Armond Douglas was dispatched to the scene of an automobile accident on Siegen Lane in Baton Rouge, north of Interstate 10. Upon his arrival, Trooper Douglas was given the description of a vehicle that left the scene of the accident after hitting another vehicle. Trooper Douglas pursued and stopped the vehicle near the intersection of Siegen Lane and Perkins Road. The defendant, David Ramos, was driving the vehicle in question. Trooper Douglas noted the smell of alcohol as he conversed with the defendant and informed him of the reason for the stop and of his Miranda rights.[3] The defendant did not have any identification and, after being transported to State Police Troop A headquarters, admitted that he was present in the United States unlawfully. The defendant was charged with operating a vehicle without lawful presence in *283 the United States, hit-and-run driving, and operating a vehicle while intoxicated. After the defendant's arrest, Trooper Douglas notified the Immigration and Naturalization Service (INS) of the defendant's presence.
The defendant was charged by bill of information with operating a vehicle without lawful presence in the United States, a violation of LSA-R.S. 14:100.13. The defendant filed a motion to quash the bill of information, arguing LSA-R.S, 14:100.13 is not a valid statute as it is preempted by federal law. Following a hearing, the trial court granted the motion to quash. The State now appeals.

ASSIGNMENT OF ERROR
In its sole assignment of error, the State argues that the trial court erred in granting the defendant's motion to quash the bill of information. The State contends that the trial court granted the defendant's motion to quash because it found that LSA-R.S. 14:100.13 was preempted by the federal REAL ID Act. In support of its position that the trial court's ruling was erroneous, the State asserts that the REAL ID Act does not preempt LSA-R.S. 14:100.13 because the relevant portion of the REAL ID Act does not concern immigration law. The State also generally argues that federal immigration law does not preempt the criminal statute at issue. In response, the defendant contends that LSA-R.S. 14:100.13 constitutes an impermissible attempt to regulate immigration. The defendant further claims that federal law occupies the field of immigration regulation. Finally, the defendant argues that LSA-R.S. 14:100.13 interferes with the federal scheme for identifying individuals subject to removal and reporting them to the federal authorities.
This court has previously addressed these issues in State v. Romero, XXXX-XXXX (La.App. 1 Cir. 2/27/08), 977 So.2d 308 (unpublished), State v. Reyes, XXXX-XXXX (La.App. 1 Cir. 2/27/08), 989 So.2d 770 and State v. Gonzalez-Perez, XXXX-XXXX (La. App. 1 Cir. 2/27/08), ___ So.2d ___, ruling in each case that the REAL ID Act does not invalidate LSA-14:100.13 on the basis of federal preemption and reasoning as follows:
The Supremacy Clause declares that federal law "shall be the supreme Law of the Land [,] ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const, art. VI, cl. 2. The Supremacy Clause requires invalidation of any state legislation that burdens or conflicts in any manner with any federal laws or treaties. Thus, the determination rests on whether a state's law impermissibly interferes with federal law and is, therefore, preempted. The power to regulate immigration is unquestionably exclusively a federal power. Nevertheless, federal law does not automatically preempt every state enactment which in any way deals with aliens. See [DeCanas] v. Bica, 424 U.S. 351, 355, 96 S.Ct. 933, 936, 47 L.Ed.2d 43 (1976).
In [DeCanas], the Supreme Court set forth three tests to be used in determining whether a state statute related to immigration is preempted: (1) constitutional preemption, (2) field preemption, and (3) conflict preemption. If a statute fails any one of the three tests, it is preempted by federal law. League of United Latin American Citizens (LULAC) v. Wilson, 908 F.Supp. 755, 768 (C.D.Cal.1995) outlines the tests provided in [DeCanas] as follows:
Under the first test, the Court must determine whether a state statute is a "regulation of immigration." Since the "[p]ower to regulate immigration is unquestionably exclusively a federal *284 power," [DeCanas v. Bica, 424 U.S.] at 354, 96 S.Ct. at 936, any state statute which regulates immigration is "constitutionally proscribed." [DeCanas, 424 U.S.] at 356, 96 S.Ct. at 936.
Under the second test, even if the state law is not an impermissible regulation of immigration, it may still be preempted if there is a showing that it was the "clear and manifest purpose of Congress" to effect a "complete ouster of state powerincluding state power to promulgate laws not in conflict with federal laws" with respect to the subject matter which the statute attempts to regulate. [DeCanas, 424 U.S.] at 357, 96 S.Ct. at 937. In other words, under the second test, a statute is preempted where Congress intended to "occupy the field" which the statute attempts to regulate.
Under the third test, a state law is preempted if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." [DeCanas, 424 U.S.] at 363, 96 S.Ct. at 940 (citing Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). Stated differently, a statute is preempted under the third test if it conflicts with federal law making compliance with both state and federal law impossible. Michigan Canners & Freezers v. Agricultural Marketing and Bargaining Board, 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984); Florida Lime & Avocado Growers v. Paul, 373 U.S. 132, 142-43, 83 S.Ct. 1210, 1217-18, 10 L.Ed.2d 248 (1963).
The issue in the case before us presents a question of law and is, therefore, subject to de novo review. State v. Smith, 99-2094, p. 3 (La.7/6/00), 766 So.2d 501, 504. In interpreting [LSA-]R.S. 14:100.13, we consider two established rules of statutory construction: (1) all criminal statutes are construed strictly, and (2) the words of a statute must be given their everyday meaning. See State v. Kujawa, 05-0470, p. 7 (La, App. 1st Cir.2/22/06), 929 So.2d 99, 104, writ denied, 06-0669 (La.10/6/06), 938 So.2d 65. [LSA-]R.S. 14:100.13 provides:
A. No alien student or nonresident alien shall operate a motor vehicle in the state without documentation demonstrating that the person is lawfully present in the United States.
B. Upon arrest of a person for operating a vehicle without lawful presence in the United States, law enforcement officials shall seize the driver's license and immediately surrender such license to the office of motor vehicles for cancellation and shall immediately notify the [Immigration and Naturalization Service] of the name and location of the person.
C. Whoever commits the crime of driving without lawful presence in the United States shall be fined not more than one thousand dollars, imprisoned for not more than one year, with or without hard labor, or both.
[LSA-]R.S. 14:100.13 does not actually forbid illegal aliens from driving; it requires that all non-resident alien drivers carry proof of legal status. See [LSA-]R.S. 14:100.13 A. The statute was enacted by 2002 La. Acts, 1st Ex.Sess., No. 46, § 1. As part of the same act, the legislature enacted [LSA-]R.S. 14:100.11, which sets forth the findings of the legislature and the purpose of [LSA-]R.S. 14:100.12 et seq. as follows:
A. The legislature finds that the devastating consequences of the barbaric attacks on September 11, 2001 on the World Trade Center and the Pentagon as well as the pervasive *285 bomb threats and biological terrorism in various parts of the country were committed for the purposes of demoralizing and destabilizing our society and creating a climate of fear. These heinous deeds designed to kill, maim, and strike terror into the hearts of innocent citizens of this country cannot be tolerated, nor can those less violent acts to the infrastructure of our state which are designed to intimidate, confuse, and disrupt everyday commerce and the delivery of goods and services to the populace be permitted.
B. The legislature further finds that it is imperative that state laws be enacted to complement federal efforts to uncover those who seek to use the highways of this state to commit acts of terror and who seek to gain drivers' licenses or identification cards for the purposes of masking their illegal status in this state. Accordingly, the legislature finds that state law must be strengthened with a comprehensive framework for punishing those who give false information in order to obtain drivers' licenses or identification cards from the office of motor vehicles of the Department of Public Safety and Corrections, to limit the issuance of such documentation to correspond to the time limits placed by the federal Immigration and Naturalization Service on documentation, and to make operating a motor vehicle in this state when not lawfully present in the United States a crime.
Congress has exercised its power over immigration in the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq. (the "INA"). The INA is a comprehensive regulatory scheme which regulates the authorized entry, length of stay, residence status, and deportation of aliens. See Gonzales v. City of Peoria, 722 F.2d 468, 474-75 (9th Cir.1983), overruled on other grounds by Hodgers-Durgin v. de la Vina, 199 F.3d 1037 (9th Cir.1999) (recognizing that the regulatory scheme created by the INA is so pervasive as to be consistent with the exclusive federal power over immigration). The INA delegates enforcement duties to the Immigration and Naturalization Service ("INS"). Because the federal government bears the exclusive responsibility for immigration matters, the states "can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens in the United States or the several states." Takahashi v. Fish & Game Comm'n, 334 U.S. 410, 419, 68 S.Ct. 1138, 1142, 92 L.Ed. 1478(1948). See also Plyler v. Doe, 457 U.S. 202, 225, 102 S.Ct. 2382, 2399, 72 L.Ed.2d 786 (1982) (noting that the States enjoy no power with respect to the classification of aliens).
The REAL ID Act provides that beginning three years after the date of its enactment, May 11, 2005, a federal agency may not accept, for any official purpose, a driver's license or identification card issued by a state to any person unless the state is meeting the requirements of the Act.[[4]] The Act defines *286 official purpose as including acts such as accessing federal facilities, boarding federally-regulated commercial aircraft, entering nuclear power plants, and any other purposes that the Secretary of Homeland Security shall determine.
Subsection 202(c)(1) of the Act lists the types of identification information that must be provided before a state may issue a driver's license or identification card, and Subsection 202(c)(2) requires verification by valid documentary evidence of an applicant's citizenship or immigration status. Subsection 202(c)(3)(B) indicates that to satisfy a requirement of Subsection 202(c)(1) or (2), a state shall not accept any foreign document, other than an official passport.
While a driver's license from a noncomplying state may not be accepted by any federal agency for federal identification or any other official purpose, the Act does not mandate implementation by individual states. In other words, the REAL ID Act permits a state to issue drivers' licenses and identification cards that do not conform to the Act's requirements.
In [DeCanas], the Court examined California Labor Code § 2805(a) (1971), which provided that "[n]o employer shall knowingly employ an alien who is not entitled to lawful residence in the United States if such employment would have an adverse effect on lawful resident workers." 424 U.S. at 352 n. 1, 96 S.Ct. at 935 n. 1. Noting that California had "sought to strengthen its economy by adopting federal standards in imposing criminal sanctions against state employers who knowingly employ aliens who have no federal right to employment within the country," the Supreme Court found that the statute did not constitute an immigration regulation, but rather, had only "some purely speculative and indirect impact on immigration[.]" [DeCanas], 424 U.S. at 355, 96 S.Ct. at 936.
Further, in [DeCanas] the Court emphasized that the mere fact a state statute pertains to aliens does not require a finding of preemption, pointing out "the Court has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus per se pre-empted by this constitutional power[.]" [DeCanas], 424 U.S. at 355, 96 S.Ct. at 936. The Court stressed "the fact that aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." [DeCanas], 424 U.S. at 355, 96 S.Ct. at 936.
In this case, the trial court found that the REAL ID Act does not prohibit a state from including additional requirements for individuals who seek to operate a vehicle within the state, noting that the defense did not ask the trial court to rule on the constitutionality of the statute in general.FN3 The defense objected to the trial court's ruling.
FN3. It appears that the trial court limited the defense's preemption argument solely to the REAL ID Act. Nonetheless, based on our review of the motion to quash, the defense's argument on the motion, and in an abundance of caution, we conclude the defense adequately re served the preemption arguments raised in this assignment of error.
The defense cited State v. Lopez, 05-0685 (La.App. 4th Cir.12/20/06), 948 So.2d 1121, writ denied, 07-0110 (La.12/7/07), 969 So.2d 619, in the motion to quash. In concluding that [LSA-]R.S. 14:100.13 is preempted by federal regulations, the Fourth Circuit Court of Appeal found the ultimate problem presented *287 by [LSA-]R.S. 14:100.13 A is that it places a burden on both legal and illegal aliens that exceeds any standard contemplated by federal immigration law. Lopez, 05-0685 at p. 6, 948 So.2d at 1125. However, 8 U.S.C. § 1304(e) states:
Every alien, eighteen years of age and over, shall at all times carry with him and have in his personal possession any certificate of alien registration or alien registration receipt card issued to him pursuant to subsection (d) of this section. Any alien who fails to comply with the provisions of this subsection shall be guilty of a misdemeanor and shall upon conviction for each offense be fined not to exceed $100 or be imprisoned not more than thirty days, or both.
This federal law requires aliens eighteen years of age or over who are legally present in the United States to carry documentation of proof of alien registration at all times. Thus, as evidenced by 8 U.S.C. § 1304(e), the Fourth Circuit incorrectly determined that [LSA-]R.S. 14:100.13 A places a burden on aliens that is not contemplated by federal immigration law.
The state of Louisiana is vested with the authority to regulate its public roads and highways under its police power, provided that the legislation does not prove repugnant to the provisions of the state or national constitutions. See Kaltenbach v. Breaux, 690 F.Supp. 1551, 1553 (W.D.La.1988). [LSA-]R.S. 14:100.13 involves a determination of who may lawfully operate a vehicle in this state. The statute in question is not triggered by mere presence. Instead, the criminal act prohibited is the operation of a vehicle without proper documentation of lawful presence. Accordingly, [LSA-]R.S. 14:100.13 is not a constitutionally impermissible regulation of immigration because it does not involve a state determination of who should be admitted into the country or the conditions under which a legal entrant may remain. Moreover, we do not find a clear and manifest purpose of Congress to effect a complete ouster of the state's power to regulate requirements for legal operation of a vehicle on its public roads and highways. Clearly, laws passed by Congress preempt conflicting state laws. Where there is no conflict, however, dual sovereignty allows complementary state and federal laws to exist. We conclude neither the REAL ID Act nor any other federal law conflicts with the Louisiana statute. [LSA-]R.S. 14:100.13 complements and augments federal law by reporting to the INS anyone caught without evidence of legal status.
The presumption is that Congress does not intend to preempt state law, unless it speaks with clarity otherwise. See Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Moreover, the REAL ID Act is not presently in effect and will not be before May 11, 2008. By its express terms, the REAL ID Act is binding on federal agencies, not states. Any burden caused by a state's refusal to comply with the minimum document requirements and issuance standards for federal recognition of its drivers' licenses will fall on those citizens of that state who need to acquire and utilize alternative documents for federal purposes, rather than on the state as a sovereign. Accordingly, we agree with the trial court's conclusion that [LSA-]R.S. 14:100.13 is not preempted by federal law and in its denial of the motion to quash.
State v. Reyes, XXXX-XXXX at pp. 3-11, 989 So.2d at 776-77. See also State v. Romero, *288 XXXX-XXXX at pp. 3-10, 2008 WL 508647, ** 1-6 and State v. Gonzalez-Perez, XXXX-XXXX at pp. 4-10, ___ So.2d at ___ _ ___.
In addition to the reasons stated by this court in State v. Reyes, State v. Romero, and State v. Gonzalez-Perez, we further note that rather than being in conflict with the REAL ID Act, LSA-R.S. 14:100.13 in fact implements the aims and goals of the Act as well as those of federal immigration law in general. Title II of the REAL ID Act is entitled, "Improved Security for Drivers' Licenses and Personal Identification Cards." Prior to issuance of a driver's license, a state is required by Section 202(c)(1) of Title II to obtain and verify the following information: (1) a photo identity document, except that a non-photo identity document is acceptable if it includes both the person's full legal name and date of birth; (2) documentation showing the person's date of birth; (3) proof of the person's social security account number or verification that the person is not eligible for a social security account number; and (4) documentation showing the person's name and address of principal residence. Also, in order for a state's issuance of a driver's license to comply with Title II, Section 202(b) requires that certain minimum information and features be included on drivers' licenses issued by the state: (1) the person's full legal name; (2) the person's date of birth; (3) the person's gender; (4) the person's driver's license or identification card number; (5) a digital photograph of the person; (6) the person's address of principal residence; (7) the person's signature; (8) physical security features designed to prevent tampering, counterfeiting, or duplication of the document for fraudulent purposes; and (9) a common machine-readable technology, with defined minimum data elements. Moreover, a state is mandated by Title II, Section 202(c)(2) to require, before issuing a driver's license, "valid documentary evidence"[5] that the person: (i) is a citizen or national of the United States; (ii) is an alien lawfully admitted for permanent or temporary residence in the United States; (iii) has conditional permanent resident status in the United States; (iv) has an approved application for asylum in the United States or has entered into the United States in refugee status; (v) has a valid, unexpired nonimmigrant visa or nonimmigrant visa status for entry into the United States; (vi) has a pending application for asylum in the United States; (vii) has a pending or approved application for temporary protected status in the United States; (viii) has approved deferred action status; or (ix) has a pending application for adjustment of status to that of an alien lawfully admitted for permanent residence in the United States or conditional permanent resident status in the United States. Furthermore, the overall intent of the REAL ID Act, as evidenced by its Title I, "Amendments to Federal Laws to Protect Against Terrorist Entry," and Title II, "Improved Security for Drivers' Licenses and Personal Identification Cards," is the denial of entry, and the detection and removal of illegal aliens,[6] particularly those *289 having terrorist connections, from U.S. soil. See also 8 U.S.C.A. § 1185; 8 U.S.C.A. § 1221, et seq.
During the hearing on the motion to quash in the instant case, Trooper Douglas testified that "a person of [the defendant's] status visiting the United States ... [is] required to have three documents, their passport, visa, and a driver's license from their home country to constitute a driver's license in the United States." The defendant in this case did not have any of those items. Trooper Douglas indicated that when a suspect admits that he is an illegal alien, federal agents of Border Patrol or INS are contacted and those agencies "process them from there." According to Trooper Douglas, once the defendant was booked, a detainer was placed on him by a federal agency, which would make the ultimate determination as to whether the defendant was an illegal alien.
In granting the defendant's motion to quash the bill of information, the trial court, noting that federal law controls whether or not a person is an illegal alien in this country, held that federal law preempts the statute in question. After a thorough examination of the law, jurisprudence, and prior decisions of this court, we find that LSA-R.S. 14:100.13 is not preempted by federal law and conclude the trial court erred in holding otherwise. In view of the fact that federal law prohibits the presence of illegal aliens in this country and that, by means of the federal REAL ID Act, the federal government has encouraged states to preclude illegal aliens from being issued drivers' licenses, it is clear that this state's efforts to identify illegal aliens and prohibit them from driving on the roads of this state via the enactment of LSA-R.S. 14:100.13 are not preempted by, but rather complement and assist, relevant federal law.[7]
*290 Accordingly, the trial court erred in granting the defendant's motion to quash. Thus, we conclude the State's assignment of error has merit and we must remand for further proceedings.
GRANTING OF MOTION TO QUASH REVERSED; REMANDED FOR FURTHER PROCEEDINGS.
WHIPPLE, J. concurs, for reasons assigned.
GUIDRY, J. dissents and assigns reasons.
WELCH J. dissents for reasons assigned by GUIDRY.
WHIPPLE, J. concurring.
Although the statute at issue has a laudable purpose, I find that the Louisiana statute involves an attempt to regulate immigration, which is a function more appropriately reserved to the federal government under the Supremacy Clause of the U.S. Constitution. However, given the stated purpose of the statute and the obligation to apply existing First Circuit case law, as cited by the majority, I am constrained to concur in the result reached by the majority.
GUIDRY, J., dissenting.
While I agree that La. R.S. 14:100.13 is not preempted by the REAL ID Act of 2005, Pub.L. No. 109-13, Div. B, Title II, § 202, 119 Stat. 231, I nevertheless respectfully dissent from the majority's opinion because I believe that La. R.S. 14:100.13, as enacted, impermissibly impinges on federal authority to regulate immigration matters. The majority describes La. R.S. 14:100.13 as simply "a determination of who may or may not lawfully operate a vehicle in this state" and classifies the statute as an act to "regulate the public roads and highways" within in the state pursuant to the inherent police powers granted to states under the United States Constitution. However, the majority ignores the fact that underlying this seemingly legitimate and valid purpose is the authorization of state action that is constitutionally proscribed.
Whether a state may invoke its police powers depends on whether the field is federally preempted. Abdullah v. American Airlines, Inc., 969 F.Supp. 337, 351 (D.Virgin Islands 1997). A state safety regulation may be preempted not only when it conflicts with federal law, but when Congress has validly decided to occupy the field for the federal government. In such cases, state regulations will be invalidated no matter how well they comport with substantive federal policies. Abdullah, 969 F.Supp. at 350. Preemption principles apply even to matters of special concern to the states, as the relative importance to the state of its own law is not material when there is a conflict with a valid federal law. Southwestern Bell Wireless Inc. v. Johnson County Board of County Comissioners, 199 F.3d 1185, 1194 (10th Cir.1999), cert. denied, 530 U.S. 1204, 120 S.Ct. 2199, 147 L.Ed.2d 234 (2000).
Under the Supremacy Clause, there is a presumption in favor of preemption in fields that are inherently federal in character and that states have not traditionally occupied. Orelski v. Pearson, 337 F.Supp.2d 695, 699 (W.D.Pa.2004). In De Canas v. Bica, 424 U.S. 351, 354-355, 96 S.Ct. 933, 936, 47 L.Ed.2d 43 (1976), the U.S. Supreme Court noted that only the federal government may regulate immigration, which the Court defined as "a determination *291 of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." Thus, states enjoy no power with respect to the classification of aliens. Plyler v. Doe, 457 U.S. 202, 225, 102 S.Ct. 2382, 2399, 72 L.Ed.2d 786 (1982).
In evaluating the statute at issue herein, it is first observed that La. R.S. 14:100.13 is found under the subdivision of Title 14 entitled "Prevention of Terrorism on Highways." Subpart A of the statute states that "[n]o alien student or nonresident alien shall operate a motor vehicle in the state without documentation demonstrating that the person is lawfully present in the United States." (Emphasis added.) "`Documentation demonstrating lawful presence in the United States'" is defined under La. R.S. 14:100.12(3) as "a document demonstrating lawful presence in the United States as determined by the Department of Public Safely and Corrections pursuant to La. R.S. 32:409.1(A)(2)(d)(vi)." (Emphasis added.) Review of La. R.S. 32:409.1(A)(2)(d)(vi) reveals that the statute likewise provides in pertinent part[1] that "[t]he list of acceptable documents demonstrating lawful presence shall be determined by the [Department of Public Safety and Corrections]."
One of the reasons for which the federal district court in Villas at Parkside Partners v. City of Farmers Branch, 496 F.Supp.2d 757 (N.D.Tex.2007) found a city ordinance to be preempted by federal law was based on the fact that the ordinance did not adopt federal immigration standards for establishing proof of immigration status. The city's argument that its ordinance "simply requires the collection of immigration information" was rejected by the court that found that "the Ordinance burdens private citizens and city officials with making immigration status decisions based upon a scheme that does not adopt federal immigration standards." Villas at Parkside Partners, 496 F.Supp2d at 770-772. See also League of United Latin American Citizens (LULAC) v. Wilson, 908 F.Supp. 755, 769-771 (C.D.Cal.1995).
It is the creation of standards for determining who is and is not in this country legally that constitutes a regulation of immigration, not whether a state's determination results in the actual removal or inadmissibility of any particular alien, for the standards themselves are "a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." Equal Access Education v. Merten, 305 F.Supp.2d 585, 602-6034 (E.D.Va. 2004) (quoting De Canas, 424 U.S. at 355, 96 S.Ct at 936). State policies, laws or regulations that create and apply state standards  as opposed to adopting federal standards  to assess immigration status runs afoul of the Supremacy Clause, and thus are preempted by federal law. See *292 Equal Access Education, 305 F.Supp.2d at 603.
Similarly, La R.S. 14:100.13, read in pari materia with La. R.S. 14:100.12 and La. R.S. 32:409.1(A)(2)(d)(vi), requires state agents to intrude on the province of the federal government to determine who is or who is not lawfully present in the United States by leaving the determination of what documentation is acceptable to prove lawful presence in the United States to the discretion of state officials. Moreover, I respectfully disagree with the majority's contention that leaving the determination of lawful presence to the discretion of state officials, without reference to any federal immigration standards for making the determination, is somehow changed or mitigated because the state standard or scheme, as outlined in La. R.S. 32:409.1(A)(2)(d)(vi) (read in conjunction with La. R.S. 32:409.1(A)(2)(d)(x) and rules promulgated by the Department of Public Safety pursuant thereto), includes a list of mostly federally-issued documents as acceptable documentation.
Therefore, to the extent that such document collection and review is not based on federal immigration standards, the statute is a regulation of immigration in violation of the first test enunciated under De Canas. See De Canas, 424 U.S. at 355-56, 96 S.Ct at 936-937. Since such an attempt to regulate immigration violates the Supremacy Clause of the U.S. Constitution, I would affirm the trial court's determination that La. R.S. 14:100.13 is preempted by federal law.
NOTES
[1] The "Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005" was enacted by Pub.L. No. 109-13, 119 Stat. 231 (2005). Division A of the Act addressed "Emergency Supplemental Appropriations for Defense, the Global War Terror, and Tsunami Relief," while Division B if the Act was entitled the "REAL ID Act of 2005."
[2] The stated facts were presented during the hearing on the motion to quash.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] In accordance with Section 205 of the Act, a state may be granted an extension of time to meet the requirements of Section 202(a)(1) if the state provides adequate justification for noncompliance. The Department of Homeland Security has granted Real ID Act extensions through December 31, 2009, to every state in the country, as well as the District of Columbia and all five U.S. territories. See Department of Homeland Security, REAL ID: States Granted Extensions, http://www.dhs. gov/xprevprot/programs/gc_1204567770971. shtm (last modified June 3, 2008).
[5] Section 202(c)(3) of Title II further requires a state, prior to issuing a driver's license, to: "verify, with the issuing agency, the issuance, validity, and completeness of each document required to be presented;" limit acceptance of foreign documents to an official passport; and utilize the "Systematic Alien Verification for Entitlements" automated federal system to "verify the legal presence status of a person, other than a United States citizen."
[6] As defined in 8 U.S.C.A. § 1101(A)(3), the term "alien" means "any person not a citizen or national of the United States." "Nonresident alien" is defined by LSA-R.S. 14:100.12(5) as "any person who is not a United States citizen and who is a citizen of any country other than the United States, who is physically present in the United States and who has not acquired INS permanent resident status."
[7] Nor do we believe, as suggested by the dissent hereto, that LSA-R.S. 14:100.12(3)'s reference to LSA-R.S. 32:409.1(A)(2)(d)(vi) (stating in part that "[t]he list of acceptable documents demonstrating lawful presence shall be determined by the [Department of Public Safety and Corrections]") requires state agents "to intrude on the province of the federal government to determine who is or who is not lawfully present in the United States." When LSA-R.S. 32:409.1(A)(2)(d)(vi) is read in connection with LSA-R.S. 32:409.1(A)(2)(d)(x), it is clear that the legislature intended to allow the Department of Public Safety and Corrections (the "department") the discretion to accept from alien driver's license applicants, as part of their proof of lawful status: a passport, a permanent resident alien card, and/or "some document of equal significance considered by the secretary of the department or his designee to assure sufficient proof of identity." In application of these provisions, the department has issued "Section 1, Policy 6.02" detailing the documents acceptable from aliens prior to driver's license issuance in this state. In each instance, the documents listed are those issued by the U.S. Department of Homeland Security, U.S. Department of State, Office of Foreign Missions, or the Social Security Administration. See http://web 01.dps.louisiana.gov/OMV1.nsf/58c968bd569 b099986256cdc000806eb/b5f27a9c7 f2a864186256b6f004a2erf?OpenDocument. The nine pages comprising the department's policy list over sixty-five descriptive classes for aliens and detail the action to be taken with respect to each (either requirement of a particular federal status document prior to issuance of a license or denial of same). Such a compilation would be difficult to include in LSA-R.S. 32:409.1, and would undoubtedly require recurring legislative amendment to remain current with the frequent changes in federal regulation. Thus, we conclude that the deferral by LSA-R.S. 32:409.1(A)(2)(d)(vi), to the Louisiana Department of Public Safety and Corrections for a determination of the list of acceptable documents demonstrating lawful presence, was not included in the statute to allow the department to usurp the power of the federal government in this area, but rather as a practical matter to allow for continual updating of the state's list to include changes decreed by the federal agencies.
[1] The entire provision states:

Social security number. Any alien individual residing in Louisiana who does not possess and is ineligible to obtain a social security number shall not be required to furnish a social security number for issuance of a Class "E" driver's license. However, prior to the issuance of a Class "E" driver's license, in addition to other required documentation, the department shall require the alien individual to present a document demonstrating lawful presence in the United States in a status in which the alien individual may be ineligible to obtain a social security number. The list of acceptable documents demonstrating lawful presence shall be determined by the department. The department shall maintain confidentiality of an applicant's social security number. The department shall not deny any person a driver's license or a renewal if that person has not obtained a government-issued social security number based on Section 7 of Pub.L. 93-579 Section (a)(1).