BONIN, J.,
Concurs with Additional Reasons.
|,I respectfully concur in the affirmation of the trial court’s ruling which sustained the motion to quash. I explain my views in the following parts.
I
This case presents an important jurisdictional issue, which is resolved by considerations of the federal and state constitutions. This case also presents an issue of general statutory construction which is reviewed de novo. See Burnette v. Stalder, 00-2167, p. 5 (La.6/29/01), 789 So.2d 573, 577; see also State v. Ramos, 07-1448, p. 4 (La.App. 1 Cir. 7/28/08), 993 So.2d 281, 284. Although a trial court’s ruling on a motion to quash will generally not be reversed absent an abuse of discretion, see *1271 State v. Batiste, 05-1571, p. 9 (La.10/17/06), 939 So.2d 1245, 1251, a trial court’s legal findings are subject to a de novo standard of review, see State v. Smith, 99-0606, p. 3 (La.7/6/00), 766 So.2d 501, 504. Here, the trial court’s ruling on the motion to quash was based on a legal finding and is, therefore, subject to this Court’s de novo review. See State v. Roach, 10-0991, p. 2 (La.App. 1 Cir. 12/22/10), — So.3d -, 2010 WL 5178116.
II
In In re Gault, the Supreme Court applied the fundamental Fifth Amendment right to counsel to juvenile proceedings. The Court held “that the Due |2Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile’s freedom is curtailed, the child and his parents must be notified of the child’s right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child.” In re Gault, 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The Legislature too has provided that all federal and state constitutional rights guaranteed to criminal defendants, except the right to jury trial, are applicable to delinquency proceedings. See La. Ch.C. Art. 808. Specifically, “at every stage of proceedings under this Title, the accused child shall be entitled to the assistance of counsel at state expense.” La. Ch.C. Art. 809 B.
One aspect of this fundamental right to counsel is the ability of the accused to comprehend the proceedings as a function of the right to counsel. A defendant may not be put to trial unless he “has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding ... [and] a rational as well as factual understanding of the proceedings against him.” Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). The United States Supreme Court has “repeatedly and consistently recognized that the criminal trial of an incompetent defendant violates due process.” Cooper v. Oklahoma, 517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996). Louisiana recognizes the constitutional necessity of mental competency to stand trial for both adult and juvenile offenders. See, e.g., State v. Snyder, 98-1078, p. 22 (La.4/14/99), 750 So.2d 832, 849; State v. Howard, 98-64, pp. 3-4 (La.4/23/99), 751 So.2d 783, 791-792. Thus, any attempt to place an incompetent child on trial would be a Due Process violation and is prohibited by the federal constitution. Accordingly, our interpretation of a Louisiana statute on mental competence ought to comport with the Federal Constitution.
J¿n
The state constitution generally provides that children accused of committing criminal offenses shall be specially treated: “The determination of guilt or innocence, the detention, and the custody of a person who is alleged to have committed a crime prior to his seventeenth birthday shall be pursuant to special juvenile procedures which shall be provided by law.” La. Const. Art. 5, § 19. The Legislature may, however, by a two-thirds vote of each chamber establish special exceptions so that juvenile procedures shall not apply. Id. The Louisiana Supreme Court has “founded upon Article V, § 19 a general rule of ‘non-criminal’ treatment of juveniles.” In re C.B., 97-2783, pp. 9-10 (La.3/4/98), 708 So.2d 391, 396. This “noncriminal” treatment means that “adult criminal treatment was the exception and that juveniles were not to be punished as adults, except as provided by the constitu *1272 tion.” C.B., 97-2783, p. 10, 708 So.2d at 396.
' The enabling legislation provides that “a court exercising juvenile jurisdiction shall have exclusive jurisdiction” over delinquency proceedings with two exceptions. La. Ch.C. Art. 303(1). The first exception is when a child “is subject to the jurisdiction of the criminal courts for prosecution and liability as an adult pursuant to Chapter 4 of this Title.” La. Ch.C. Arts. 303(1)(a), and 305-306.1. The second exception is when the child “has been transferred by the juvenile court for criminal prosecution and liability as an adult pursuant to Chapter 11 of Title VIII.” La. Ch.C. Arts. 303(l)(b), and 857-864. This latter exception does not apply to this case because it governs transfers to a court exercising criminal jurisdiction in which a delinquency proceeding has already been commenced by the filing of a petition by the district attorney. See La. Ch.C. Arts. 842 and 857 A. With respect to the former (or first) exception, as a general proposition, indictment by the grand jury is alone sufficient to transfer a child charged with armed robbery to the exclusive jurisdiction of a court exercising |4criminal jurisdiction and to pretrial detention in an adult facility. See La. Ch.C. Art. 305 B(l)(a), B(2)(d), and B(4).
But what is most important for our purposes in this matter is the recognition that because at the time that the child was determined to lack the mental capacity to proceed (that is, before the grand jury indictment) the court exercising juvenile jurisdiction was the court of exclusive jurisdiction. Stated slightly differently, the court with exclusive jurisdiction determined that this child lacked the mental capacity to proceed. See La. Ch.C. Art. 837 B. This finding means that “as a result of mental illness or developmental disability, a child presently lacks the capacity to understand the nature of the proceedings against him or to assist in his defense.” La. Ch.C. Art. 804(7); see also La. Ch.C. Art. 835 B(6)(c) (one factor is the child’s deficiency in “rendering assistance to defense counsel in preparation of the case.”)
Therefore, any effort to bring this child to trial any time before a court with jurisdiction, especially one with exclusive jurisdiction, determined the child to be competent, would violate the child’s Due Process rights under the Fifth and Fourteenth Amendments.
IV
Under the legislative enabling schema, the child has a considerable interest in not divesting the juvenile court of its exclusive jurisdiction during the period of his mental incapacity to proceed for at least two important reasons. First, a proper divestiture is irreversible or irrevocable. Once the criminal court rightfully acquires jurisdiction over the juvenile, there is no reverse transfer of jurisdiction back to the juvenile court. See La. Ch.C. Art. 305 D (“The court exercising criminal jurisdiction shall retain jurisdiction over the child’s case ... A plea to or conviction of a lesser included offense shall not revest jurisdiction in the court exercising | juvenile jurisdiction over such a child.”)[1] Second, the disparate restorative treatments available to a child are dependent upon the kind of jurisdiction which the court is exercising over him. I discuss this aspect in greater detail.
Generally, because of the noncriminal nature of the juvenile system, a court exercising juvenile jurisdiction focuses on rehabilitation and individual treatment, as opposed to retribution. In re C.B., 97-2783, *1273 p. 10, 708 So.2d at 396-97. A child being prosecuted in a court exercising criminal jurisdiction is entitled to invoke the same special procedures for determination of his mental capacity as a child who is in a court exercising juvenile jurisdiction. See La. C.CR.P. Art. 644.1 A, and La. Ch.C. Arts. 833-836. But what happens to the child after a determination of mental incapacity to proceed is found by the two courts exercising different kinds of jurisdiction is dramatically different solely depending upon the kind of jurisdiction being exercised. La.C.Cr.P. Art. 644.1 B (“The provisions of Code of Criminal Procedure Articles 648 through 649.1 shall govern the determination of capacity or incapacity to proceed to trial.”)
A juvenile, in the parlance of the Code of Criminal Procedure, in the jurisdiction of a court exercising criminal jurisdiction who has been determined to lack the mental capacity to proceed is literally treated differently from a child, in the parlance of the Children’s Code, who has been determined to lack the mental capacity to proceed. The disparate treatment of the differently situated juvenile and child bears closer examination because it illuminates the issue before us.
The efforts at restoration of the competency of a juvenile charged with armed robbery who is being prosecuted in criminal court and who is found to be mentally incompetent are governed by the Code of Criminal Procedure. Article 648 provides various dispositions that the criminal court may impose. For example, if the district court determines that he may regain competence within ninety days, |fithe court may require that the accused remain in the custody of the authorities while receiving outpatient care. LA. C.CR.P. ART. 648 A(l). For a juvenile charged with armed robbery in the district court, “the court may order immediate jail-based treatment by the Department of Health and Hospitals not to exceed ninety days,” or if the court finds that his capacity cannot be restored in ninety days, the court will commit the juvenile to the Feliciana Forensic Facility. LA C.CR.P. ART. 648 A(2)(a). These are the same options available to adult defendants in the criminal system, but the options -available to children in the juvenile system are unavailable to the juvenile prosecuted in criminal court.
A child accused of armed robbery in a juvenile court found to be mentally competent will be afforded greater protections under the Louisiana Children’s Code. If the child lacks mental capacity, the juvenile court may dismiss the petition, order a family-based disposition by adjudicating that the family of the child is in need of services, commit the child to the Department of Health and Hospitals, a private mental institution, or an institution for the mentally ill and order restoration services, or place the child in the custody of his parents or another under terms and conditions that would best serve the interests of the child. La. Ch.C. Art. 837 B(l)-(4). Most importantly, the out-of-home placement or commitment of a child under the age of seventeen shall be in a separate unit and program from an adult forensic program. La. Ch.C. Art. 837 H.
I cannot overlook, therefore, that a child has considerable mental-health and liberty interests in asserting, and demanding, that the proper court exercise its proper jurisdiction. I would expect that depriving a child of the more appropriate restorative services available in juvenile jurisdiction proceedings would unfavorably lengthen his pretrial detention whether in an adult jail or in the Feliciana Forensic Facility.

JjY

I now turn to. consider the prosecution’s argument that the grand jury’s indictment of this child is sufficient to divest the juvenile court of its jurisdiction and is *1274 alone sufficient to vest exclusive jurisdiction in the district court exercising criminal jurisdiction.
I first observe that this argument requires us to accept that the Legislature in this one instance intended a prosecutorial procedure that was wholly inconsistent with its other pronouncements in similar situations. In all other permutations of the problem presented, just raising mental incapacity halts prosecutions. “When the question of the defendant’s mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except institution of prosecution, until the defendant is found to have the mental capacity to proceed.” La.C.Cr.P. Art. 642 (emphasis added); see also State ex rel. Seals v. State, 00-2738 (La.10/25/02), 831 So.2d 828, 832-833 (discussing the criminal procedure in the district court once the issue of a defendant’s competency is raised). This applies to adults as well as juveniles prosecuted in a court exercising criminal jurisdiction. For a court exercising juvenile jurisdiction there is a comparable provision to the same effect: “When the question of the child’s mental incapacity to proceed is raised, there shall be no further steps in the delinquency proceeding, except the filing of a delinquency petition, until counsel is appointed and notified in accordance with Article 809(B) and the child is found to have the mental capacity to proceed.” La. Ch.C. Art. 832 (emphasis added). This, by its very terms, applies whether the district attorney has or has not filed a delinquency petition.
But the prosecution asks that we disregard the consistency in the manners in which prosecutions or proceedings are halted in both courts exercising criminal jurisdiction and juvenile jurisdiction and conclude that a prosecution is not halted when juvenile court is, it argues, automatically divested of its exclusive jurisdiction |Rby the indictment of this child and the case is in transit from a court exercising juvenile jurisdiction to a court exercising criminal jurisdiction. Yet the statute provides that “if a competency or sanity commission is ordered, except for the filing of a delinquency petition, no further steps to prosecute the child in a court exercising criminal jurisdiction shall occur until ... the court determines mental capacity to proceed in accordance with Chapter 7 of Title VIII.” La. Ch.C. Art. 305 E(l)(b) (all emphasis added).[2]
It is worthwhile to note that the triggering mechanism under Article 305 E(l) is that the competency commission has been ordered, not simply that the mental incapacity of the accused has been raised. Cf. La.C.Cr.P. Art. 642, and La. Ch.C. Art. 832. This is a salutary safeguard against tactics designed solely to obstruct or unjustifiably delay the divestiture of the juvenile court’s jurisdiction when the grand jury has decided to indict a child.[3]
So long as juvenile court had exclusive jurisdiction over this child, until his capacity to proceed is restored, the only step authorized is the filing of a delinquency *1275 petition.[4] The institution of prosecution in a court having criminal jurisdiction, whether by indictment or information, is a further step to prosecute a child in a court exercising criminal jurisdiction. See La. C.CR.P. Art. 382 A, and 383-384; see also La.C.Cr.P. Art. 381 (“A criminal prosecution is brought in the name of the state in a court of criminal jurisdiction, for the purpose of bringing to punishment one who has violated the criminal law.”)
| aIn our case, however, not only was the mental examination of the child ordered and a competency commission appointed, but the juvenile judge actually determined that the child lacked the mental capacity to proceed. Several months passed before the grand jury indicted. After the indictment, and for reasons not explained to us, neither the district attorney nor the defense counsel took any action for many months to halt the criminal proceedings on account of the competency commission’s and the juvenile judge’s findings of mental incapacity to proceed. In other words, not only did the lawyers act as if this child had the mental capacity to proceed, they also acted as if the juvenile proceedings had never occurred.
Thus, many further steps, even beyond the indictment itself, were taken to prosecute this child in a court exercising criminal jurisdiction.
That Article 305 E(l) is directed to preventing divestiture of the juvenile court’s jurisdiction under these circumstances is plain to me for several reasons. First, the expressed limitation to the single step which might be taken being the filing of the delinquency petition; this is the only charging instrument available in juvenile court. The article does not provide for, as the prosecution urges, “indictment,” or “information,” or the more generic “institution of prosecution,” as they have no place in juvenile court. Second, indeed the Children’s Code never uses the term “prosecution” to describe its own juvenile jurisdiction proceedings, but only to refer to criminal jurisdiction proceedings. See, e.g., La. Ch.C. Art. 857 A (“to consider whether to transfer a child for prosecution to the appropriate court exercising criminal jurisdiction”). Third, Article 305 E(l) addresses a court “exercising criminal jurisdiction.” The article need not address its own juvenile proceedings as any juvenile proceedings are already halted by operation of Article 832. Fourth, Article 305 E(2) would be rendered nonsensical. “When a child has |inbeen charged with one or more crimes listed in Article 857, has reached twenty-one years of age and is incompetent, the court on its own motion or on motion of the district attorney may conduct a hearing to consider whether to transfer the child for further proceedings to the appropriate court exercising criminal jurisdiction.” LA. CH.C. ART. 305 E(2).[5] If the juvenile court had *1276 been divested of its jurisdiction, there would be no need for this kind of transfer.
■ While it may be that the Legislature could constitutionally allow a divestiture of the juvenile court’s exclusive jurisdiction after the court’s ordering a competency hearing or even after a court’s finding of mental incapacity, I am certain that the Legislature could not provide for a procedure which ignores a finding of a child’s incápacity and compels the child to a criminal trial.[6] The Legislature is not permitted to condone a procedure which violates a child’s Due Process rights.
That inescapable truth is the strongest argument against the prosecution’s interpretation of the statute. The plain, not strained, reading of Article 305 E(l) comports with the requirements of Due Process — to halt any and all prosecutorial and-delinquency proceedings of a child who lacks mental capacity to proceed. The child can also access the statutory benefits of age-appropriate restorative care.
VI
If the district attorney at this time files, as he is permitted to do, a delinquency petition, then he may upon the restoration of the child’s mental capacity seek an Article-857 transfer hearing. If he decides not to file a delinquency petition, upon the restoration of the child’s mental capacity, he may seek from the grand .jury a new indictment under Article 305 B(l)(a), or seek a [^continued custody hearing and file a bill of information under Article 305 B(l)(b). But until the child’s mental capacity to proceed is restored, juvenile court is the court of exclusive jurisdiction.
For those preceding additional reasons, I join the majority in affirming the district court’s sustaining the motion to quash the indictment because the district court had no jurisdiction over the offense charged. See La.C.Cr.P. Arts. 16 (“Courts have the jurisdiction and powers over criminal proceedings that are conferred on them by the constitution and statutes of this state, except as their statutory jurisdiction and powers are restricted, enlarged, or modified by the provisions of this Code.”), and 532(8) (“A motion to quash may be based on one or more of the following grounds: ... the court has no jurisdiction of the offense charged.”)

. See also La. Ch.C. Art 863 A, which applies to post-petition cases transferred from a court exercising juvenile jurisdiction to one exercising criminal jurisdiction.

. The portion omitted in the ellipsis reads, "counsel is appointed for the child and notified in accordance with Article 809.” La. Ch. C. Art. 305 E(l)(a).

. This higher standard for halting proceedings, it seems to me, reasonably answers the prosecution's argument that control of the prosecution is in the hands of the defense counsel and not the district attorney. See State in Interest of T.C., 09-1852, p. 9 (La.App. 1 Cir. 2/12/10), 35 So.3d 1088, 1092 (Carter, C.J., dissenting). But also see Meghan C. Harwell, Louisiana Progress Journal, "Roadblocks to Change: Juvenile Justice Reform and the Louisiana 2010 Legislative Session,” pp. 4-5 (Fall 2010) (for discussion on the Legislature’s more recent enactments to expand and expedite the appointment of counsel for children accused of delinquent acts and the authorities referred to therein).

. The revision in 2004 of Articles 832 through 838 reflect ongoing reforms in the area of juvenile justice; as Professor Lucy McGough has noted, these articles were revised "to reflect the importance of the youth’s understanding, comprehension of his risk and ability to assist defense counsel in preparation of the defense. If mental incapacity is raised, counsel must be appointed if not already assigned and the delinquency proceeding stayed until the issue is resolved.” Lucy S. McGough, Louisiana Children's Code Handbook, “A Decade of Juvenile Justice Reform,” p. xxvii (2009-2010).

. Note that the transfer in this article is "for further proceedings” and not a transfer "for prosecution” as provided in Article 857 A. Modifying the conditions of continued detention of a now-adult incompetent person hardly presents the kinds of concerns which arise in adolescents’ mental-health issues. See Roper v. Simmons, 543 U.S. 551, 567, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (Society views juveniles generally and mentally incompetent adults specifically as "categorically less culpable than the average criminal.’’).

. It seems to me that this is exactly what was attempted in this case.