PER CURIAM.
[¡¡Defendant, Milton Lopez, was arrested on suspicion of driving while intoxicated following a single-vehicle crash. Defendant had no driver’s license on his person and was unable to produce documentation of his status in the United States. The State subsequently charged him by bill of information with operating a motor vehicle without proper documentation demonstrating he is lawfully present in the United States, a felony in violation of La. R.S. 14:100.13(A). Defendant filed a motion to quash, asserting that La. R.S. 14:100.13 is unconstitutional because it attempts to regulate immigration and, as such, is preempted by federal law. Following a hearing, the trial court denied the motion to quash. Defendant filed this writ application, seeking review of the trial court’s ruling.[1] Finding no error in the trial court’s conclusion, for these reasons, we deny relief.
The issue raised in this writ is whether La. R.S. 14:100.13 is preempted by federal law because, as implemented, it results in the regulation of immigration. Because it presents a question of law, it is subject to a de novo standard of review. See State v. Smith, 99-0606 (La.7/6/00), 766 So.2d 501, 504.
The provisions of La. R.S. 14:100.13 were enacted by Acts 2002, 1st Extraordinary Session, No. 46, § 1, in response to the 911 terrorist attacks. The Louisiana legislature found it imperative to enact state laws to complement federal efforts to uncover those who seek to use the highways of this state to commit acts of terror and to gain drivers’ licenses or identification cards for the purposes of masking their illegal status in this state. See La. R.S. 14:100.11(A) & (B).
La. R.S. 14:100.13 provides, in part, that:
A. No alien student or nonresident alien shall operate a motor vehicle in the state without documentation demonstrating that the person is lawfully present in the United States.
|aB. Upon arrest of a person for operating a vehicle without lawful presence in the United States, law enforcement officials shall seize the driver’s license and immediately surrender such license to the office of motor vehicles for cancellation and shall immediately notify the [Immigration and Naturalization Service] of the name and location of the person.
Defendant asks this court to reverse the trial court’s ruling on the motion to quash and revisit our position on the relationship between La. R.S. 14:100.13 and federal law, in light of the recent opinion of Arizona v. United States, — U.S. -, 132 S.Ct. 2492, 183 L.Ed.2d 351 (2012), wherein the United States Supreme Court expressed concerns about the possible detention or holding of persons simply to verify their immigration status. Defendant maintains that La. R.S. 14:100.13 unlawfully infringes on the federal government’s plenary power by attempting to regulate the area of immigration and, thus, violates the Supremacy Clause of the United *3 States Constitution. See LJ.S. Const, art. VI, cl. 2.[2] Although he acknowledges several recent decisions of this court, in support of his position, defendant relies on State v. Lopez, 2005-0685 (La.App. 4th Cir.12/20/06), 948 So.2d 1121, writ denied, 2007-0110 (La.12/7/07), 969 So.2d 619.
In Lopez, the fourth circuit determined that La. R.S. 14:100.13 was preempted by federal regulations. In reaching this conclusion, the fourth circuit found that La. R.S. 14:100.13 placed a burden on both legal and illegal aliens that exceeded any standard contemplated by federal immigration law. Lopez, 948 So.2d at 1125.
By contrast, in an en banc decision rendered subsequent to Lopez, this court addressed and rejected similar preemption arguments. See State v. Ramos, 2007-1448 (La.App. 1st Cir.7/28/08), 993 So.2d 281 (en banc), writ denied, 2008-2103 (La.12/18/09), 23 So.2d 929. Noting that under 8 U.S.C. § 1304(e), federal law requires aliens eighteen years of age or over who are legally present in the United ^States to carry documentation of proof of alien registration at all times, this court disagreed with the fourth circuit’s conclusion that La. R.S. 14:100.13 placed a burden on both legal and illegal aliens that is not contemplated by federal immigration law. Ramos, 993 So.2d at 287 (quoting State v. Reyes, 2007-1811 (La.App. 1st Cir.2/27/08), 989 So.2d 770, 776).
Turning to the U.S. Supreme Court’s recent decision, see Arizona, 132 S.Ct. 2492, we note that under scrutiny was the Support Our Law Enforcement and Safe Neighborhood Act (S.B. 1070) enacted by the state of Arizona to address pressing issues related to the large numbers of aliens within its state borders without the lawful right to be present in the country. The United States filed suit against Arizona seeking to enjoin S.B. 1070. The question before the Court was whether federal law preempted and rendered invalid four separate provisions of S.B. 1070. Although the Arizona court concluded that Sections 3, 5(C), and 6 of S.B. 1070 were preempted, it held that it was improper to enjoin Section 2(B) before the Arizona state courts had an opportunity to construe it since there was no showing that enforcement of Section 2(B) in fact conflicted with federal immigration law and its objectives. See Arizona, 132 S.Ct. at 2510.[3]
According to the provisions of Section 2(B) of S.B. 1070, state officers are required to make a “reasonable attempt ... to determine the immigration status” of any person they stop, detain, or arrest on some other legitimate basis if “reasonable suspicion exists that the person is an alien and is unlawfully present in the United States.” See A.R.S. § 11-1051(B). The law also provides that “[a]ny person who is arrested shall have the person’s immigration status determined before the person is released.” Id.; Arizona, 132 S.Ct. at 2507. The Court stated that to detain [fiindividuals solely to verify immigration status raises constitutional concerns, noting that it is a disruption of the federal framework to put state officers in the position of holding aliens in custody for possi *4 ble unlawful presence without federal direction and supervision. Arizona, 132 S.Ct. at 2509. While recognizing significant limitations on the authority of state or local enforcement officers to adopt the enforcement mechanism of S.B. 1070, the Court indicated that if Section 2(B) “only requires state officers to conduct a status check during the course of an authorized, lawful detention or after a detainee has been released, the provision likely would survive preemption — at least absent some showing that it has other consequences that are adverse to federal law and its objectives.” Id. at 2509.
In his writ application, defendant specifically contends that because the Arizona court did not foreclose other preemption and constitutional challenges to the Arizona law, it is appropriate for this court to reconsider its position on this issue. Defendant asserts that, unlike the Arizona law, La. R.S. 14:100.13 does not merely afford state officers authorization to conduct a status check or detain a person until their immigration status is determined by federal immigration authorities, it makes it a felony for a person to operate a motor vehicle without documents demonstrating lawful presence. Thus, he urges, the actual effect of La. R.S. 14:100.13, when implemented, criminalizes unlawful presence. As a result, defendant avers that the Louisiana statute criminalizes “non-criminal conduct.”
In opposition to defendant’s writ application, the State notes that defendant’s entire preemption argument is predicated on the false assertion that La. R.S. 14:100.13 addresses only illegal immigrants. But the State points out that even when a nonresident alien or alien student present in the United States legally fails to carry his or her proof of lawful presence while operating a motor vehicle, that person also violates the statute. Thus, the State maintains there is no requirement launder La. R.S. 14:100.13 that a violator must be an illegal alien since it addresses only proof that the alien motorist has a valid state-issued driver’s license.
Federal law does not automatically preempt every state enactment which addresses aliens. A state statute related to immigration is preempted when there is either a constitutional, field, or conflict preemption. See De Canas v. Bica, 424 U.S. 351, 96 S.Ct. 933, 936, 47 L.Ed.2d 43 (1976) (superseded by statute on other grounds as stated in Chamber of Commerce of United States v. Whiting, — U.S. -, 131 S.Ct. 1968, 179 L.Ed.2d 1031 (2011)). The mere fact that a state statute pertains to aliens does not mandate a finding of preemption. The Court has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus per se pre-empted by this constitutional power. Rather, the Court stressed “the fact that aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain.” Reyes, 989 So.2d at 776 (quoting De Canas, 424 U.S. at 355, 96 S.Ct. at 936).
La. R.S. 14:100.13 is not preempted by a constitutional preemption because it does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in its enactment of legislation regulating immigration. See Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).
Because La. R.S. 14:100.13 merely complements federal efforts against terrorism by monitoring who may operate a vehicle in this state, it is not perempted by *5 conflict preemption. Unlike the Arizona statute, La. R.S. 14:100.13 does not provide that any person arrested must have the person’s immigration status determined before the person is released. See Arizona, 132 S.Ct. at 2507. And counteracting terrorism is not adverse to federal law and its objectives. Therefore, |7there is no indication that compliance with both the federal and state provisions is impossible.
Lastly, the State’s enactment of La. R.S. 14:100.13 does not fail under field preemption. La. R.S. 14:100.13 is not a regulation of immigration, a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance. See U.S. Const. art. VI, cl. 2; Gade v. National Solid Wastes Management Ass’n, 505 U.S. 88, 115, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992); and Arizona, 132 S.Ct. at 2501. La. R.S. 14:100.13 does not involve a determination of who should enter the United States or under what conditions aliens may remain. Federal law requires aliens present in the United States to register with the federal government and to carry proof of status on their person. See 8 U.S.C. §§ 1301-1306. Nothing in La. R.S. 14:100.13 attaches criminal consequences by the mere presence. Instead, the criminal act prohibited is (1) the operation of a vehicle (2) without proper documentation of lawful presence, the latter element of which is totally congruent with 8 U.S.C. §§ 1301-1306. And it is axiomatic that the State is vested with the authority to regulate its public roads and highways under its police power. As a result, this court has found no clear and manifest purpose of Congress to effect a complete ouster of state power to regulate requirements for legal operation of a vehicle on its public roads and highways. See State v. Sanchez, 2010-0016 (La.App. 1st Cir.6/11/10), 39 So.3d 834, 839.
DECREE
For these reasons, we conclude that La. R.S. 14:100.13 is not a constitutionally impermissible regulation of immigration. Accordingly, the relief sought in the writ application submitted by Milton Lopez is denied.
WRIT DENIED.

. Notice was provided to the Attorney General, as required by La. R.S. 13:4448, advising that the constitutionality of La. R.S. 14:100.13 had been challenged in this writ. The Attorney General and the District Attorney filed a joint opposition to the writ application.

. The United States Constitution Article VI, clause 2 states that federal law "shall be the supreme Law of the Land[,] ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.”

. Because the federal governments lawsuit was brought before the effective date of S.B. 1070, it was inappropriate to assume the provisions of Section 2(B) would be construed in a way that created a conflict with federal law. Arizona, 132 S.Ct. at 2510. Thus, the Supreme Court held that enjoining Section 2(B) of s.B. 1070 on the basis of a facial challenge was improper in its present posture. See Arizona, 132 S.Ct. at 2510.