BROWN, Chief Judge,
dissenting.
J^There have been several Louisiana cases upholding La. R.S. 14:100.13 both before and after the decision in Arizona v. United States, supra. See State v. Lopez, 12-2043 (La.App. 1st Cir.03/21/13), 116 So.3d 1, 2013 WL 1200338, there are two major contexts in which preemption is found. First, express preemption occurs where the federal statute contains explicit preemptive language. Second, there is implied preemption. The court has identified two types of implied preemption: (1) field preemption (a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject); and (2) conflict preemption. Conflict preemption typically occurs in one of the following two scenarios: (a) in the rare case where it is impossible to comply with both the federal and state statute; or (b) in the more prevalent situation where the state law impedes the achievement of the congressional objective.
Power to regulate immigration is unquestionably exclusively a federal power. (Citations omitted). But the Court has never held that every state enactment *1259 which in any way deals with aliens is a regulation of immigration and thus per se pre-empted by this constitutional power, whether latent or exercised. For example, Takahashi v. Fish & Game Comm’n, 334 U.S. 410, 415-422, 68 S.Ct. 1138, 1140-1144, 92 L.Ed. 1478 (1948), and Graham v. Richardson, 403 U.S. 365, 372-373, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534 (1971), cited a line of cases that upheld certain discriminatory state treatment of aliens lawfully within the United States. Although the “doctrinal foundations” of the cited cases, which generally arose under the Equal Protection Clause, (citations omitted), they remain authority that, standing alone, the fact that aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain. Indeed, | ¡>there would have been no need, in cases such as Graham, Takahashi, or Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941), even to discuss the relevant congressional enactments in finding preemption of state regulation if all state regulation of aliens was ipso facto regulation of immigration, for the existence vel non of federal regulation is wholly irrelevant if the Constitution of its own force requires pre-emption of such state regulation. In this case, California has sought to strengthen its economy by adopting federal standards in imposing criminal sanctions against state employers who knowingly employ aliens who have no federal right to employment within the country; even if such local regulation has some purely speculative and indirect impact on immigration, it does not thereby become a constitutionally proscribed regulation of immigration that Congress itself would be powerless to authorize or approve. Thus, absent congressional action, § 2805 would not be an invalid state incursion on federal power.
DeCanas v. Bica, 424 U.S. 351 at 354 (1976), 96 S.Ct. 933, 47 L.Ed.2d 43. (Superseded by congressional action).[6]
Section 2(B) of the Arizona statute provided that officers who conduct a stop, detention, or arrest must in some circumstances make efforts to verify the person’s immigration status with the federal government. In Arizona v. United States, supra, the U.S. Supreme Court stated:
However the law is interpreted, if § 2(B) only requires state officers to conduct a status check during the course of an authorized, lawful detention or after a detainee has been released, the provision likely would survive preemption — at least absent some showing that it has other consequences that are adverse to federal law and its objectives. There is no need in this case to address whether reasonable suspicion of illegal entry or another immigration crime would be a legitimate basis for prolonging a detention, or whether this too would be preempted by federal law. See, e.g., United States v. Di Re, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210 *1260 (1948) (authority of state officers to make arrests for federal crimes is, absent federal statutory instruction, a matter of state law); Gonzales v. Peoria, 722 F.2d 468, 475-476 (C.A.9 1983) (concluding that Arizona officers have authority to enforce the criminal provisions of federal immigration law), overruled on other grounds in Hodgers-Durgin v. de la Vina, 199 F.3d 1037 (C.A.9 1999).
In the case sub judice, there was a legitimate stop and detention for child seat belt violations and then no driver’s license. By the U.S. Supreme Court’s upholding § 2(B) of the Arizona statute, and leaving in place the lower court’s decision not to enjoin the bulk of the statute, much of the principled line drawn in De Canas remains intact. This state’s statute, La. R.S. 14:100.13, should therefore survive a preemption challenge. State and local law enforcement agencies necessarily and appropriately should inquire about a person’s immigration status, specifically when a person has been arrested for a violation of state criminal law. La. R.S. 14:100.13 is not a regulation of immigration. It is a regulation of the public roads and highways under Louisiana’s police power.
I respectfully dissent from the majority opinion.

. See Chamber of Commerce of U.S. v. Whiting, - U.S. -, 131 S.Ct. 1968, 179 L.Ed.2d 1031 (2011), IRCA also restricts the ability of States to combat employment of unauthorized workers. The Act expressly preempts "any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens.” § 1324a(h)(2). Under that provision, state laws imposing civil fines for the employment of unauthorized workers like the one we upheld in De Canas are now expressly preempted.