948 So.2d 1121 (2006)
STATE of Louisiana
v.
Neri LOPEZ.
No. 2005-KA-0685.
Court of Appeal of Louisiana, Fourth Circuit.
December 20, 2006.
*1122 Eddie J. Jordan, Jr., District Attorney, Meri M. Hartley, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellant.
Miguel A. Elias, Law Offices of Miguel A. Elias, Kenner, LA, for Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
The State of Louisiana appeals the trial court's judgment granting a motion to quash a bill of information in favor of Neri Lopez. We affirm.
FACTS:
Neri Lopez was stopped by the New Orleans Police Department on September 26, 2004, after the officers observed that the vehicle's brake lights were not functioning properly. When asked for a driver's license, Lopez produced only Mexican identification. Because the officers thereafter determined that Lopez was not legally in the United States, he was arrested pursuant to La. R.S. 14:100.13, which mandates that nonresident aliens and alien students may not operate motor vehicles "without documentation demonstrating that the person is lawfully present in the United States." La. R.S. 14:100.13(A).[1]
Lopez asserts that La. R.S. 14:100.13 is preempted by federal regulations because it makes an illegal alien's presence in the United States a felony in Louisiana, whereas under federal regulations, it is only a civil violation of immigration law. Conversely, the State argues that federal law does not preempt the statute, and that the legislative purpose of the statute was designed to complement federal authority regulating naturalization and immigration. The State also argues that the criminal conduct in which Lopez was engaged was not simply his presence in the United States, but his operation of a motor vehicle without proper documentation.
PROCEDURAL HISTORY:
The State filed a bill of information charging the appellee under La. R.S. 14:100.13(A). Lopez entered a plea of not guilty and filed a motion to quash the bill of information on the grounds that the offense was not punishable by a valid Louisiana statute. The trial court granted the motion, reasoning that proof of citizenship is not normally part of a routine traffic stop in Louisiana. Although many people operate vehicles without a driver's license, the court noted that citizenship is presumed by a police officer when the detained *1123 individual speaks English, regardless of whether or not the person is, in fact, a citizen. Accordingly, the trial court found that operating a motor vehicle without proof of citizenship, if it were a crime, would be a federal offense that the state of Louisiana does not have authority to regulate.
STANDARD OF REVIEW:
Questions of law, such as an analysis of a statute, are reviewed by this Court de novo. Hand v. City of New Orleans, XXXX-XXXX, p. 3 (La.App. 4 Cir. 12/22/04) 892 So.2d 609, 612. Accordingly, this Court will determine whether the trial court's ruling was legally correct. Id., citing Delacroix Corp. v. Perez, 1998-2447, p. 4 (La.App. 4 Cir. 11/8/00), 794 So.2d 862, 865.
DISCUSSION:
After the officers stopped Lopez, he produced only Mexican identification papers when asked for a driver's license and vehicle information, and spoke no English. Shortly thereafter, one of the officers used her cellular phone to contact a border patrol agent and then handed the phone to Lopez so that he could speak with the agent. After the agent and Lopez conversed, the agent advised the officer that Lopez was an illegal alien and should be arrested for operating a motor vehicle while not legally in the United States, pursuant to La. R.S. 14:100.13.
La. R.S. 14:100.13 provides as follows:
A. No alien student or nonresident alien shall operate a motor vehicle in the state without documentation demonstrating that the person is lawfully present in the United States.
B. Upon arrest of a person for operating a vehicle without lawful presence in the United States, law enforcement officials shall seize the driver's license and immediately surrender such license to the office of motor vehicles for cancellation and shall immediately notify the INS of the name and location of the person.
C. Whoever commits the crime of driving without lawful presence in the United States shall be fined not more than one thousand dollars, imprisoned for not more than one year, with or without hard labor, or both.
La. R.S. 14:100.13 was enacted by Acts 2002, 1st Ex.Sess, No. 46, § 1. As part of the same act, the legislature enacted La. R.S. 100.11, which set forth the findings of the legislature and the purpose of La. 100.12 et seq.:
A. The legislature finds that the devastating consequences of the barbaric attacks on September 11, 2001 on the World Trade Center and the Pentagon as well as the pervasive bomb threats and biological terrorism in various parts of the country were committed for the purposes of demoralizing and destabilizing our society and creating a climate of fear. These heinous deeds designed to kill, maim, and strike terror into the hearts of innocent citizens of this country cannot be tolerated, nor can those less violent acts to the infrastructure of our state which are designed to intimidate, confuse, and disrupt everyday commerce and the delivery of goods and services to the populace be permitted.
B. The legislature further finds that it is imperative that state laws be enacted to complement federal efforts to uncover those who seek to use the highways of this state to commit acts of terror and who seek to gain drivers' licenses or identification cards for the purposes of masking their illegal status in this state. Accordingly, the legislature finds that state law must be strengthened with a comprehensive framework for punishing those who give *1124 false information in order to obtain drivers' licenses or identification cards from the office of motor vehicles of the Department of Public Safety and Corrections, to limit the issuance of such documentation to correspond to the time limits placed by the federal Immigration and Naturalization Service on documentation, and to make operating a motor vehicle in this state when not lawfully present in the United States a crime.
La. R.S. 100.11 (emphasis added).
Although federal law has exclusive jurisdiction to regulate matters of naturalization and immigration pursuant to Article I, Section 8 of the Constitution, federal regulations do not automatically preempt state laws regarding such matters. See, e.g., De Canas v. Bica, 424 U.S. 351, 355, 96 S.Ct. 933, 936, 47 L.Ed.2d 43 (1976). Accordingly, states have authority pursuant to their police power "to act with respect to illegal aliens `where such action mirrors federal objectives and furthers a legitimate state goal.'" American G.I. Forum v. Miller, 218 Cal.App.3d 859, 868, 267 Cal.Rptr. 371 (4 Dist., 1990), quoting Plyler v. Doe, 457 U.S. 202, 225, 102 S.Ct. 2382, 2399, 72 L.Ed.2d 786.
After the September 11, 2001 attacks, many states enacted various laws and regulations requiring additional documentation to obtain a driver's license. Similarly, in 2005, Congress enacted the REAL ID Act, Pub.L. No. 109-13, Div. B, Title II, § 202, 119 Stat 231, to take effect in three years, which imposes various new prerequisites for a driver's license to qualify for use on an official federal purpose, such as boarding a commercial airline. Individual states are not required to implement the Act; however, other forms of identification (such as a passport) would be required to engage in federal activities.
The post-September 11, 2001 legislation has been the subject of litigation in several states. For example, in League of United Latin American Citizens (LULAC) v. Bredesen, unpub., 2004 WL 3048724 (M.D.Tenn.2004), an organization of Latin American citizens brought an action to enjoin enforcement of the newly-enacted Tennessee statute, which provided that driver's licenses could only be issued to United States citizens or lawful permanent residents. The legislation further provided that persons authorized under federal law to be present in the country for a specific purpose and a specific period of time could obtain a "certificate for driving" which would be valid for only a limited period from one to five years. Id. at *1. The court determined that LULAC had standing to bring the action, but that the plaintiffs were not a "suspect class." Id. at *4. Next, the court addressed the plaintiffs' argument that the driver's license legislation was preempted by the federal government's exclusive right to regulate immigration. Id. Citing De Canas, supra, and Plyler v. Doe, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982), the court found that preemption did not apply because the driver's license legislation mirrored federal objectives and was not an attempt to regulate immigration; rather, the legislation "merely relie[d] on federal immigration standards in determining whether a person is eligible for a drivers' license or a driver's certificate." Id. at *7. Accordingly, the court held that "Plaintiffs have not shown that the legislation conflicts with any existing federal law." Id.
The state of Louisiana is vested with the authority to regulate public roads and highways within the state under its police power, provided that the legislation does not "prove repugnant to the provisions of the state or national constitutions." Kaltenbach v. Breaux, 690 F.Supp. 1551, 1553 (W.D.La.1988). Other states' heightened *1125 requirements for aliens to qualify to obtain a driver's license have been upheld pursuant to this rule. No federal requirement exists, however, that requires persons who are legally present in the United States to at all times carry documentation of proof of citizenship. Unlike other states' restrictions regarding the issuance of driver's licenses, La. R.S. 14:100.13 makes the operation of a motor vehicle while illegally present in the United States a crime. While on its face this does not appear to run afoul of any particular federal legislation, implicit in the REAL ID act is the federal recognition that states can legally issue driver's licenses without a person being in a position to establish his legal presence in the United States.
Furthermore, the bill of information in this case specifically charged Lopez under paragraph (A), operating a motor vehicle without documentation demonstrating lawful presence. Lopez was not charged with being in the country illegally and operating a motor vehicle, which is the language found in paragraph (C) of the statute. The ultimate problem presented by La. R.S. 14:100.13, however, is that paragraph (A) places a burden on both legal and nonlegal aliens which exceeds any standard contemplated by federal immigration law. Accordingly, we agree that La. R.S. 14:100.13 is preempted by federal regulations.
CONCLUSION:
For the reasons stated above, we affirm the trial court's judgment to quash the bill of information.
AFFIRMED.
ARMSTRONG, C.J., concurs.
NOTES
[1] Persons who do so "shall be fined not more than one thousand dollars, imprisoned for not more than one year, with or without hard labor, or both." La. R.S. 14:100.13(C).