989 So.2d 770 (2008)
STATE of Louisiana
v.
Gabriel Dominguez REYES.
No. 2007 KA 1811.
Court of Appeal of Louisiana, First Circuit.
February 27, 2008.
Rehearing Denied July 14, 2008.
*772 Doug Moreau, District Attorney, Dylan C. Alge, Assistant District Attorney, Baton Rouge, Louisiana, for Appellee, State of Louisiana.
Katherine M. Franks, Abita Springs, Louisiana, for Appellant, Gabriel D. Reyes.
Before PARRO, KUHN and DOWNING, JJ.
KUHN, J.
Defendant, Gabriel Dominguez Reyes, was charged by bill of information with operating a vehicle without lawful presence in the United States, a violation of La. R.S. 14:100.13. Defendant filed a motion to quash the bill of information, arguing La. R.S. 14:100.13 is not an enforceable statute as it is preempted by federal law. Following a hearing, the trial court denied the motion. Defendant withdrew his former plea and entered a plea of guilty as charged, reserving his right to appeal the trial court's ruling. Defendant was sentenced to six months imprisonment without hard labor.[1] Defendant now appeals, assigning error to the trial court's denial of the motion to quash. We affirm the conviction and sentence.

FACTS
The following facts were presented as a basis for the guilty plea. On or about November 15, 2006, law enforcement officers observed defendant operating a vehicle as he ran a stop sign. The officers conducted a traffic stop. Defendant was unable to produce a valid driver's license and said that he did not have one. Further, defendant did not have any documents demonstrating that he was legally present in the United States.

ASSIGNMENT OF ERROR
In his sole assignment of error, defendant contends that the enforcement of La. R.S. 14:100.13, as written, constitutes an impermissible exercise of the state's police power and violates the federal government's authority to regulate immigration in contravention of U.S. Const. art. VI, cl. 2. Defendant also asserts the statute is inconsistent with its stated purpose. Defendant claims that the statute subjects all foreigners in this state  even citizens and permanent residents  to additional scrutiny and possible arrest for not carrying immigration documents. Defendant questions whether the statute impinges on the federal government's plenary power to regulate immigration by providing sanctions for behavior not deemed criminal under the federal scheme or by providing for sanctions in excess of that mandated by the federal immigration statutes. Defendant urges that Congress controls the field of immigration regulation and suggests that the Louisiana statute exceeds the requirements *773 of federal immigration law without any showing of a compelling state interest. Finally, defendant avers that La. R.S. 14:100.13 interferes with the federal scheme for identifying individuals subject to removal and reporting them to the federal authorities.
Noting that states retain authority to enact criminal laws, the State maintains that the trial court was correct in finding La. R.S. 14:100.13 is not preempted by federal law and points out that no deportation determination is required by La. R.S. 14:100.13. Urging that nothing in the REAL ID Act of 2005[2] expressly or impliedly prohibits a state from prosecuting a person for illegally driving a vehicle, the State asserts that federal immigration law does not prohibit its criminalizing of conduct that it believes to be a legitimate terror threat.
The Supremacy Clause declares that federal law "shall be the supreme Law of the Land [,] ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Supremacy Clause requires invalidation of any state legislation that burdens or conflicts in any manner with any federal laws or treaties. Thus, the determination rests on whether a state's law impermissibly interferes with federal law and is, therefore, preempted. The power to regulate immigration is unquestionably exclusively a federal power. Nevertheless, federal law does not automatically preempt every state enactment which in any way deals with aliens. See De Canas v. Bica, 424 U.S. 351, 355, 96 S.Ct. 933, 936, 47 L.Ed.2d 43(1976).
In De Canas, the Supreme Court set forth three tests to be used in determining whether a state statute related to immigration is preempted: (1) constitutional preemption, (2) field preemption, and (3) conflict preemption. If a statute fails any one of the three tests, it is preempted by federal law. League of United Latin American Citizens (LULAC) v. Wilson, 908 F.Supp. 755, 768 (C.D.Cal.1995) outlines the tests provided in De Canas as follows:
Under the first test, the Court must determine whether a state statute is a "regulation of immigration." Since the "[p]ower to regulate immigration is unquestionably exclusively a federal power," [De Canas v. Bica, 424 U.S.] at 354, 96 S.Ct. at 936, any state statute which regulates immigration is "constitutionally proscribed." [De Canas, 424 U.S.] at 356, 96 S.Ct. at 936.
Under the second test, even if the state law is not an impermissible regulation of immigration, it may still be preempted if there is a showing that it was the "clear and manifest purpose of Congress" to effect a "complete ouster of state power  including state power to promulgate laws not in conflict with federal laws" with respect to the subject matter which the statute attempts to regulate. [De Canas, 424 U.S.] at 357, 96 S.Ct. at 937. In other words, under the second test, a statute is preempted where Congress intended to "occupy the field" which the statute attempts to regulate.
Under the third test, a state law is preempted if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." [De Canas, 424 U.S.] at 363, 96 *774 S.Ct. at 940 (citing Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). Stated differently, a statute is preempted under the third test if it conflicts with federal law making compliance with both state and federal law impossible. Michigan Canners & Freezers v. Agricultural Marketing and Bargaining Board, 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984); Florida Lime & Avocado Growers v. Paul, 373 U.S. 132, 142-43, 83 S.Ct. 1210, 1217-18, 10 L.Ed.2d 248 (1963).
The issue in the case before us presents a question of law and is, therefore, subject to de novo review. State v. Smith, 99-2094, p. 3 (La.7/6/00), 766 So.2d 501, 504. In interpreting La. R.S. 14:100.13, we consider two established rules of statutory construction: (1) all criminal statutes are construed strictly, and (2) the words of a statute must be given their everyday meaning. See State v. Kujawa, 05-0470, p. 7 (La.App. 1st Cir.2/22/06), 929 So.2d 99, 104, writ denied, 06-0669 (La.10/6/06), 938 So.2d 65. La. R.S. 14:100.13 provides:
A. No alien student or nonresident alien shall operate a motor vehicle in the state without documentation demonstrating that the person is lawfully present in the United States.
B. Upon arrest of a person for operating a vehicle without lawful presence in the United States, law enforcement officials shall seize the driver's license and immediately surrender such license to the office of motor vehicles for cancellation and shall immediately notify the [Immigration and Naturalization Service] of the name and location of the person.
C. Whoever commits the crime of driving without lawful presence in the United States shall be fined not more than one thousand dollars, imprisoned for not more than one year, with or without hard labor, or both.
La. R.S. 14:100.13 does not actually forbid illegal aliens from driving; it requires that all non-resident alien drivers carry proof of legal status. See La. R.S. 14:100.13 A. The statute was enacted by 2002 La. Acts, 1st Ex.Sess., No. 46, § 1. As part of the same act, the legislature enacted La. R.S. 14:100.11, which sets forth the findings of the legislature and the purpose of La. R.S. 14:100.12 et seq. as follows:
A. The legislature finds that the devastating consequences of the barbaric attacks on September 11, 2001 on the World Trade Center and the Pentagon as well as the pervasive bomb threats and biological terrorism in various parts of the country were committed for the purposes of demoralizing and destabilizing our society and creating a climate of fear. These heinous deeds designed to kill, maim, and strike terror into the hearts of innocent citizens of this country cannot be tolerated, nor can those less violent acts to the infrastructure of our state which are designed to intimidate, confuse, and disrupt everyday commerce and the delivery of goods and services to the populace be permitted.
B. The legislature further finds that it is imperative that state laws be enacted to complement federal efforts to uncover those who seek to use the highways of this state to commit acts of terror and who seek to gain drivers' licenses or identification cards for the purposes of masking their illegal status in this state. Accordingly, the legislature finds that state law must be strengthened with a comprehensive framework for punishing those who give false information in order to obtain drivers' licenses or identification cards from the office of motor vehicles of the *775 Department of Public Safety and Corrections, to limit the issuance of such documentation to correspond to the time limits placed by the federal Immigration and Naturalization Service on documentation, and to make operating a motor vehicle in this state when not lawfully present in the United States a crime.
Congress has exercised its power over immigration in the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq. (the "INA"). The INA is a comprehensive regulatory scheme which regulates the authorized entry, length of stay, residence status, and deportation of aliens. See Gonzales v. City of Peoria, 722 F.2d 468, 474-75 (9th Cir.1983), overruled on other grounds by Hodgers-Durgin v. de la Vina, 199 F.3d 1037 (9th Cir.1999) (recognizing that the regulatory scheme created by the INA is so pervasive as to be consistent with the exclusive federal power over immigration). The INA delegates enforcement duties to the Immigration and Naturalization Service ("INS"). Because the federal government bears the exclusive responsibility for immigration matters, the states "can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens in the United States or the several states." Takahashi v. Fish & Game Comm'n, 334 U.S. 410, 419, 68 S.Ct. 1138, 1142, 92 L.Ed. 1478 (1948). See also Plyler v. Doe, 457 U.S. 202, 225, 102 S.Ct. 2382, 2399, 72 L.Ed.2d 786 (1982)(noting that the States enjoy no power with respect to the classification of aliens).
The REAL ID Act provides that beginning three years after the date of its enactment, May 11, 2005, a federal agency may not accept, for any official purpose, a driver's license or identification card issued by a state to any person unless the state is meeting the requirements of the Act. The Act defines official purpose as including acts such as accessing federal facilities, boarding federally-regulated commercial aircraft, entering nuclear power plants, and any other purposes that the Secretary of Homeland Security shall determine.
Subsection 202(c)(1) of the Act lists the types of identification information that must be provided before a state may issue a driver's license or identification card, and Subsection 202(c)(2) requires verification by valid documentary evidence of an applicant's citizenship or immigration status. Subsection 202(c)(3)(B) indicates that to satisfy a requirement of Subsection 202(c)(1) or (2), a state shall not accept any foreign document, other than an official passport.
While a driver's license from a noncomplying state may not be accepted by any federal agency for federal identification or any other official purpose, the Act does not mandate implementation by individual states. In other words, the REAL ID Act permits a state to issue drivers' licenses and identification cards that do not conform to the Act's requirements.
In De Canas, the Court examined California Labor Code § 2805(a) (1971), which provided that "[n]o employer shall knowingly employ an alien who is not entitled to lawful residence in the United States if such employment would have an adverse effect on lawful resident workers." 424 U.S. at 352 n. 1, 96 S.Ct. at 935 n. 1. Noting that California had "sought to strengthen its economy by adopting federal standards in imposing criminal sanctions against state employers who knowingly employ aliens who have no federal right to employment within the country," the Supreme Court found that the statute did not constitute an immigration regulation, but rather, had only "some purely speculative and indirect impact on immigration[.]" De Canas, 424 U.S. at 355, 96 S.Ct. at 936.
*776 Further, in De Canas the Court emphasized that the mere fact a state statute pertains to aliens does not require a finding of preemption, pointing out "the Court has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus per se pre-empted by this constitutional power[.]" De Canas, 424 U.S. at 355, 96 S.Ct. at 936. The Court stressed "the fact that aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." De Canas, 424 U.S. at 355, 96 S.Ct. at 936.
In this case, the trial court found that the REAL ID Act does not prohibit a state from including additional requirements for individuals who seek to operate a vehicle within the state, noting that the defense did not ask the trial court to rule on the constitutionality of the statute in general.[3] The defense objected to the trial court's ruling.
The defense cited State v. Lopez, 05-0685 (La.App. 4th Cir.12/20/06), 948 So.2d 1121, writ denied, 07-0110 (La.12/7/07), 969 So.2d 619, in the motion to quash. In concluding that La. R.S. 14:100.13 is preempted by federal regulations, the Fourth Circuit Court of Appeal found the ultimate problem presented by La. R.S. 14:100.13 A is that it places a burden on both legal and illegal aliens that exceeds any standard contemplated by federal immigration law. Lopez, 05-0685 at p. 6, 948 So.2d at 1125. However, 8 U.S.C. § 1304(e) states:
Every alien, eighteen years of age and over, shall at all times carry with him and have in his personal possession any certificate of alien registration or alien registration receipt card issued to him pursuant to subsection (d) of this section. Any alien who fails to comply with the provisions of this subsection shall be guilty of a misdemeanor and shall upon conviction for each offense be fined not to exceed $100 or be imprisoned not more than thirty days, or both.
This federal law requires aliens eighteen years of age or over who are legally present in the United States to carry documentation of proof of alien registration at all times. Thus, as evidenced by 8 U.S.C. § 1304(e), the Fourth Circuit incorrectly determined that La. R.S. 14:100.13 A places a burden on aliens that is not contemplated by federal immigration law.
The state of Louisiana is vested with the authority to regulate its public roads and highways under its police power, provided that the legislation does not prove repugnant to the provisions of the state or national constitutions. See Kaltenbach v. Breaux, 690 F.Supp. 1551, 1553 (W.D.La.1988). La. R.S. 14:100.13 involves a determination of who may lawfully operate a vehicle in this state. The statute in question is not triggered by mere presence. Instead, the criminal act prohibited is the operation of a vehicle without proper documentation of lawful presence. Accordingly, La. R.S. 14:100.13 is not a constitutionally impermissible regulation of immigration because it does not involve a state determination of who should be admitted into the country or the conditions under which a legal entrant may remain. Moreover, we do not find a clear and manifest purpose of Congress to effect a complete ouster of the state's power to *777 regulate requirements for legal operation of a vehicle on its public roads and highways. Clearly, laws passed by Congress preempt conflicting state laws. Where there is no conflict, however, dual sovereignty allows complementary state and federal laws to exist. We conclude neither the REAL ID Act nor any other federal law conflicts with the Louisiana statute. La. R.S. 14:100.13 complements and augments federal law by reporting to the INS anyone caught without evidence of legal status.
The presumption is that Congress does not intend to preempt state law, unless it speaks with clarity otherwise. See Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Moreover, the REAL ID Act is not presently in effect and will not be before May 11, 2008. By its express terms, the REAL ID Act is binding on federal agencies, not states. Any burden caused by a state's refusal to comply with the minimum document requirements and issuance standards for federal recognition of its drivers' licenses will fall on those citizens of that state who need to acquire and utilize alternative documents for federal purposes, rather than on the state as a sovereign. Accordingly, we agree with the trial court's conclusion that La. R.S. 14:100.13 is not preempted by federal law and in its denial of the motion to quash. The sole assignment of error lacks merit.

DECREE
For these reasons, we affirm the conviction and sentence of defendant, Gabriel Dominguez Reyes.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The State's cases against defendant, Javier Romero (district court number XX-XX-XXXX and Jesus Gonzalez-Perez (district court number XX-XX-XXXX) were consolidated for the motion to quash hearing, Boykin, and sentencing proceedings. On appeal, separate opinions have been rendered in each case. See State v. Romero, 07-1810 (La.App. 1st Cir.2/27/08), 977 So.2d 308(an unpublished opinion) and State v. Gonzales-Perez, 07-1813 (La.App. 1st Cir.2/27/08), ___ So.2d ___, 2008 WL 508677.
[2] In 2005, the "Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005" was signed into law. Pub.L. No. 109-13, 119 Stat. 231 (2005). Division B of this legislation has been referred to as the "READ ID Act of 2005."
[3] It appears that the trial court limited the defense's preemption argument solely to the REAL ID Act. Nonetheless, based on our review of the motion to quash, the defense's argument on the motion, and in an abundance of caution, we conclude the defense adequately reserved the preemption arguments raised in this assignment of error.