WEIMER, Justice.
Lin response to the devastating terrorist attacks of September 11, 2001, the Louisiana legislature enacted a series of laws under the title “Prevention of Terrorism on the Highways.” 2002 La. Acts, 1st Ex.Sess. 46, § 1. Among other stated aims, the purpose of the enactment was “to make operating a motor vehicle in this state when not lawfully present in the United States a crime.” La. R.S. 14:100.11(B). To that end, La. R.S. 14:100.13 was passed. The statute proscribes the operation of a motor vehicle by an alien student or nonresident alien who does not possess documentation demonstrating lawful presence in the United States. La. R.S. 14:100.13(A). Violation of the statute is a felony which carries with it a fine of not more than $1,000 and/or imprisonment for not more than one year, with or without hard labor. La. R.S. 14:100.13(0).
Following a nolo contendere plea to the charge of violating La. R.S. 14:100.13, in which he reserved the right to appeal the claim that the statute is preempted by federal law, the defendant appealed his conviction to the Court of Appeal, Third Circuit. Upon review, the appellate court reversed the defendant’s conviction and [2sentence, holding that La. R.S. 14:100.13 *455 is preempted by federal law. We granted certiorari to assess the correctness of that determination.
After review of the relevant law, both statutory and jurisprudential, and despite its laudable goal aimed at preventing acts of terrorism, we are constrained to find, based on the Supreme Court case of Arizona v. United States, — U.S. -, 132 S.Ct. 2492, 183 L.Ed.2d 351 (2012), that La. R.S. 14:100.13 operates in the field of alien registration and is, therefore, preempted by federal law under the Supremacy Clause of the U.S. Constitution. Accordingly, we affirm the judgment of the court of appeal.
FACTS AND PROCEDURAL HISTORY
On April 12, 2012, defendant Alexis Sarrabea was charged by bill of information with being an alien student and/or a nonresident alien who, on February 12, 2012, operated a motor vehicle in the parish of Lafayette without documentation demonstrating that he is lawfully present in the United States, a violation of La. R.S. 14:100.13. Defendant, a thirty-year-old non-English speaking male, initially pleaded not guilty. However, after spending more than three months in the parish jail, he entered a nolo contendere plea to the charge and, in accordance with a plea agreement with the State, was sentenced to time served. Although erroneously characterizing defendant’s plea as an “Alford plea,”[1] defense counsel nevertheless expressly reserved the right to appeal the claim that La. R.S. 14:100.13 is preempted by federal law, that the statute violates the Equal Protection Clause, that it is over-broad and vague, and that it violates the Eighth Amendment. The district court accepted the plea in accordance with the stated conditions and the defendant appealed.
|sOn appeal, a panel of the Third Circuit reversed and set aside defendant’s conviction and sentence. State v. Sarrabea, 12-1013 (La.App. 3 Cir. 5/1/13), — So.3d -, 2013 WL 1810228. Concluding that La. R.S. 14:100.13 is preempted by federal law, the court found the Supreme Court’s decision in Arizona, supra, to be both dispositive and binding, particularly that portion of the decision rejecting the state of Arizona’s attempt to punish failure to comply with federal alien registration requirements. The Third Circuit panel reasoned that, like Arizona, Louisiana has attempted to regulate in a field — alien registration — preempted by federal law where even complementary legislation is not permitted:
We are satisfied that the decision in Arizona is controlling in this case. In Arizona, the U.S. Supreme Court clearly held where Congress occupies an entire field, as it has in the field of alien registration, even a complementary state regulation is impermissible. Arizona, 132 S.Ct. at 2503. We find La. R.S. 14:100.13 is an impermissible attempt by Louisiana to regulate matters in a field already preempted by federal law.
Sarrabea, 12-1013 at 9, — So.3d -.
The court additionally found that, by enacting laws and administrative provisions in tandem with La. R.S. 14:100.13 that seek to determine what forms of documentation are acceptable proof of lawful *456 presence, Louisiana has undermined and disregarded federal law in an area that is already extensively regulated by a complex scheme requiring the exercise of executive discretion in light of national foreign policy concerns. Id. at 10-11, — So.3d -. Noting that La. R.S. 14:100.13 conflicts even more egregiously with federal law than its counterpart in the Arizona act, further intruding upon the federal scheme, the court explained:
Louisiana’s statute makes actions by an alien present in this country a felony offense while the same action by such an alien visitor is but a misdemeanor offense under federal law.... We note Section 3 of the Arizona statute, rejected by the United States Supreme Court, only made the offense a misdemeanor, but, because it imposed stricter penalties |4than the federal laws, it was held unconstitutional by the Supreme Court under the Supremacy Clause. Louisiana Revised Statute 14:100.13, which makes failure to carry proof of lawful presence in the United States while driving in Louisiana a felony offense, impermissibly usurps federal authority.
Id. at 12, — So.3d -.
Finally, the court pointed to uncertainties in the Louisiana law, particularly in identifying what constitutes probable cause for an arrest under La. R.S. 14:100.13, and in the definitions of “alien student,” “nonresident alien,” and “lawfully present in the United States,” explaining that the very existence of such uncertainties underscores the reason states cannot act in this area, which is already occupied by federal law. Id. at 14-15, — So.3d -. “To put it plain and simple,” the court succinctly concluded, “La. R.S. 14:100.13 is preempted by federal law; and the State of Louisiana lacks Constitutional authority to enforce it.” Id. at 17, — So.3d -.
From this adverse ruling, the State applied for supervisory review to this court.[2] We granted the State’s application and consolidated the case for argument with two additional cases emanating from the Third Circuit in which, in unpublished writ decisions, a different panel of the court found no error in district court rulings concluding that La. R.S. 14:100.13 is not preempted by federal law, resulting in an intra-circuit split.[3] See, State v. Marquez, 12-1316 (La.App. 3 Cir. 1/7/13) (unpub’d), writ granted, 13-0315 (La.5/3/13), 112 So.3d 851; State v. Ramirez, 12-1245 (La.App. 3 Cir. 1/7/13) (unpub’d), writ granted, 13-0276 (La.5/3/13), 112 So.3d 851. We granted certiorari to resolve that split and to put to rest the issue of whether La. R.S. 14:100.13 is preempted by federal law. State v. Sarrabea, 13-1271 (La.6/26/13), 118 So.3d 428.
LAW AND ANALYSIS
The statute at issue in this case, La. R.S. 14:100.13, was enacted as part of *457 a series of laws passed by the legislature in 2002 in response to the terrorist attacks of September 11, 2001.[4] Entitled “Prevention of Terrorism on the Highways,” the stated purpose of the laws is to “complement federal efforts to uncover those who seek to use the highways of this state to commit acts of terror” by creating “a comprehensive framework for punishing those who give false information in order to obtain drivers’ licenses or identification cards from the office of motor vehicles ... and to make operating a motor vehicle in this state when not lawfully present in the United States a crime.” La. R.S. 14:100.11(B). Enacted pursuant to this mandate, La. R.S. 14:100.13 provides:
A. No alien student[5] or nonresident alien[6] shall operate a motor vehicle in the state without documentation demonstrating that the person is lawfully present in the United States.
B. Upon arrest of a person for operating a vehicle without lawful presence in the United States, law enforcement officials shall seize the driver’s license and immediately surrender such license to the office of motor vehicles for cancellation and shall immediately notify the INS of the name and location of that person.
lñC. Whoever commits the crime of driving without lawful presence in the United States shall be fined not more than one thousand dollars, imprisoned for not more than one year, with or without hard labor, or both.
The question presented to this court for resolution is whether this provision, which the legislature clearly intended to operate in a counter-terrorism context as a complement to federal law, is instead preempted by federal law.
While the question is one of first impression in this court, it has been the subject of examination in the appellate courts. The Fourth Circuit was the first court to directly address the issue. In State v. Lopez, 05-0685 (La.App. 4 Cir. 12/20/06), 948 So.2d 1121, writ denied, 07-0110 (La.12/7/07), 969 So.2d 619, the appellate court concluded that La. R.S. 14:100.13 is preempted by federal law. Acknowledging that the “state of Louisiana is vested with the authority to regulate public roads and highways within the state under its police power, provided that the legislation does not ‘prove repugnant to the provisions of the state or national constitutions,’ ”[7] the appellate panel determined that, while on its face La. R.S. 14:100.13 “does not appear to run afoul of any particular federal legislation,” implicit in federal law is a “recognition that states can legally issue driver’s licenses without a person being in a position to establish his legal presence in the United States.” Lopez, 05-0685 at 5-6; 948 So.2d at 1124-1125. The “ultimate problem” presented by La. R.S. 14:100.13, the court reasoned, is that it “places a burden on both legal and non-legal aliens which exceeds any standard contemplated by federal immigration law.” Id.
Less than two years later, the First Circuit expressly declined to follow Lopez.
*458 In two decisions issued the same date, State v. Gonzalez-Perez, 07-1813 (La.App. 1 Cir. 2/27/08), 997 So.2d 1, writ denied, 09-0292 (La.12/18/09), 23 So.3d 930, and State v. Reyes, 07-1811 (La.App. 1 Cir. 2/27/08), 989 So.2d 770, writ denied, 08-2013 (La.12/18/09), 23 So.3d 929, the appellate panels found that La. R.S. 14:100.13 complements rather than conflicts with the federal scheme and, thus, is not preempted by federal law. In reaching its decision, the First Circuit, citing 8 U.S.C. § 1304(e), which requires every alien eighteen years of age or older to carry and have in his possession at all times any certificate of alien registration or alien registration receipt card, rejected the Fourth Circuit’s conclusion that La. R.S. 14:100.13 places a burden on aliens that is not contemplated by federal immigration law. Gonzalez-Perez, 07-1813 at 9-10, 997 So.2d at 7; Reyes, 07-1811 at 9-10, 989 So.2d at 776-777. Instead, it determined that La. R.S. 14:100.13 simply involves a determination of who may or may not lawfully operate a vehicle in this state. Id. Because the statute is not triggered by mere presence and does not involve a state determination of who should or should not be admitted into the country or the conditions under which a legal entrant may remain, the First Circuit found that La. R.S. 14:100.13 is not an impermissible regulation of immigration. Id. Additionally, the court pointed out that there is a presumption that Congress does not intend to preempt state law unless it speaks with clarity otherwise. Id. Applying the presumption, the court found that Congress had not expressed a clear and manifest intent to effect a complete ouster of state power to regulate requirements for the legal operation of a vehicle on public roads in the state. Id. The appellate court then noted that in the absence of a conflict, dual sovereignty allows complementary state and federal laws to exist. Id. Determining that La. R.S. 14:100.13 does not conflict with any federal laws but rather complements and augments federal law, the First Circuit found no basis to rule that La. R.S. 14:100.13 is preempted by federal law. Id.
In a series of decisions that followed Gonzalez-Perez and Reyes, the First Circuit continued to adhere to the conclusion that La. R.S. 14:100.13 is not preempted by federal law; rather, the statute complements and assists the federal scheme. State v. Ramos, 07-1448 (La.App. 1 Cir. 7/28/08), 993 So.2d 281, writ denied, 08-2103 (La.12/18/09), 23 So.3d 929; State v. Sanchez, 10-0016 (La.App. 1 Cir. 6/11/10), 39 So.3d 834. The court reiterated that it simply did “not find a clear and manifest purpose of Congress to effect a complete ouster of state power to regulate requirements for legal operation of a vehicle on public roads and highways within a state.” Sanchez, 10-0016 at 6, 39 So.3d at 839.
Such was the state of the jurisprudence in 2012: a split had developed among the circuit courts of appeal as to whether La. R.S. 14:100.13 is preempted by federal law, with the First and Fourth Circuits taking opposite sides of the debate. Then, in that year, the legal landscape against which these competing decisions operated was substantively altered when the Supreme Court chose to revisit this area of the law.
In Arizona v. United States, the Supreme Court considered a facial challenge to sections of Arizona's “Support Our Law Enforcement and Safe Neighborhoods Act” which had been enacted to “discourage and deter the unlawful entry and presence of aliens and economic activity by persons unlawfully present in the United States.” Arizona, 132 S.Ct. at 2497. Specifically, the Court granted certiorari to consider whether federal law preempts *459 four sections of the Arizona Act:[8] Section 3 of the Act made failure to comply with federal alien registration laws a state misdemeanor; Section 5(C) made it a state misdemeanor for an unauthorized alien to seek or engage in work in the state; Section 6 authorized state officers to make the warrantless arrest of a person if an officer has probable cause to believe the person |9has committed any public offense that makes him removable from the United States; and, finally, Section 2(B) required that state officers make a reasonable attempt to determine the immigration status of any person they stop, detain or arrest on another legitimate basis if reasonable suspicion exists that the person is an alien and is unlawfully present in the United States. Id., 132 S.Ct. at 2498.
The Court in Arizona began its analysis by reaffirming two long-standing principles which have particular resonance for this case. First, the federal government “has broad, undoubted power over the subject of immigration and the status of aliens,” power that “rests, in part, on the National Government’s constitutional power to ‘establish an uniform Rule of Naturalization,’ U.S. Const., art. I, § 8, cl.4, and its inherent power as sovereign to control and conduct relations with foreign nations.” Id., 132 S.Ct. at 2498. Second, by reason of the Supremacy Clause, U.S. Const., art. VI, cl. 2,[9] Congress has virtually unfettered power to preempt state law. Id., 132 S.Ct. at 2500. This preemption, the Court explained, may occur in one of three ways: (1) “Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision,” [express preemption]; (2) Congress may determine that conduct in a particular field “must be regulated by its exclusive governance,” a determination that may be inferred “from a framework of regulation ‘so pervasive ... that Congress left no room for the States to supplement it’ or where there is a ‘federal interest ... so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,’ ”[10] [field 1 mpreemption]; or (3) state law may conflict with federal law either because “compliance with both state and federal regulations is a physical impossibility” or because the state law “stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,”[11] [conflict preemption]. Id., 132 S.Ct. at 2500-2501 (citations omitted).
The Court then considered each of the four provisions of the Arizona act in light of these principles. Regarding Section 3, which created a state misdemeanor proscribing the willful failure to complete or carry an alien registration document, the Court found that “[t]he framework enacted by Congress leads to the conclusion ... that the Federal Government has occupied the field of alien registration.” Id., 132 S.Ct. at 2502. Referencing 8 U.S.C. § 1302, 1304-1306, the Court noted:
*460 The federal statutory directives provide a full set of standards governing alien registration, including the punishment for noncompliance. It was designed as a ‘harmonious whole.’ Where Congress occupies an entire field, as it has in the field of alien registration, even complementary state regulation is impermissible. Field preemption reflects a congressional decision to foreclose any state regulation in this area, even if it is parallel to federal standards.
Id., 132 S.Ct. at 2502 (citations omitted), quoting Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).
In reaching its conclusion, the Court rejected Arizona’s contention that Section 3 of the act was permissible because it complemented federal law. The Court found this argument “not only ignores the basic premise of field preemption — that States may not enter, in any respect, an area the Federal Government has reserved for itself — but also is unpersuasive on its own terms,” because, as the Court pointed out, “[w]ere § 3 to come into force, the State would have the power to bring criminal charges against individuals for violating a federal law even in circumstances where federal officials |T1in charge of the comprehensive scheme determine that prosecution would frustrate federal policies.” Id., 132 S.Ct. at 2503.
The Court also pointed to the inconsistency between Section 3 of the Arizona Act and federal law with respect to penalties, concluding that the Arizona law, which (unlike its federal counterpart) rules out probation as a possible sentence and also eliminates the possibility of a pardon, creates a conflict with the plan Congress put in place, underscoring the fundamental reason for field preemption. Id., 132 S.Ct. at 2503.
In contrast to Section 3 of the Act, Section 5(C) created a state criminal prohibition that lacked any federal counterpart: Section 5(C) made it a state misdemeanor for an unauthorized alien to knowingly apply for work, solicit work in a public place, or perform work as an employee or independent contractor in Arizona. Distinguishing its prior decision in DeCanas v. Bica, 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976), which found that a state had authority to pass its own laws on the subject at a time when there was no comprehensive federal program regulating the employment of unauthorized aliens, the Court noted that federal law at present contains “a comprehensive framework for ‘combating the employment of illegal aliens,’ ”[12] which “does not impose federal criminal sanctions on the employee side,” but rather imposes civil penalties. Id., 132 S.Ct. at 2504 (internal quotation marks omitted). The Court found from examining the legislative background that “Congress made a deliberate choice not to impose criminal penalties on aliens who seek, or engage in, unauthorized employment.” Id., 132 S.Ct. at 2504. Acknowledging the express preemption provision in the federal law is silent as to whether additional penalties may be imposed against employees, the Court ultimately found this section of the | ^Arizona Act preempted because it “would interfere with the careful balance struck by Congress with respect to unauthorized employment of aliens” as “it involves a conflict in the method of enforcement.” Id., 132 S.Ct. at 2505.
The Court then turned to Section 6 of the Arizona Act, which provided that a state officer without a warrant may arrest *461 a person if the officer has probable cause to believe the person has committed any public offense that makes him removable from the United States. The Court noted that under federal law, warrantless arrest of an unauthorized alien by federal officers is permitted only where the alien is likely to escape before a warrant can be obtained. Id., 132 S.Ct. at 2506. It found that “Section 6 attempts to provide state officers even greater authority to arrest aliens on the basis of possible removability than Congress has given trained federal immigration officers.” Id., 132 S.Ct. at 2506. The Court determined that this was tantamount to Arizona “achiev[ing] its own immigration policy” which “violates the principle that the removal process is entrusted to the discretion of the Federal Government.” Id. It rejected the contention that Arizona’s law complemented the federal framework by allowing “cooperation” between state and federal agents: “no coherent understanding of the term [cooperation] would incorporate the unilateral decision of state officers to arrest an alien for being removable absent any request, approval, or other instruction from the Federal Government.” Id. at 2507. The Court then summarized its conclusions:
Congress has put in place a system in which state officers may not make war-rantless arrests of aliens based on possible removability except in specific, limited circumstances. By nonetheless authorizing state and local officers to engage in these enforcement activities as a general matter, § 6 creates an obstacle to the full purposes and objectives of Congress.

Id.

11sFinally, the Court turned its attention to Section 2(B) of the Arizona Act, which requires state officers to make a “ ‘reasonable attempt to determine the immigration status’ of any person they stop, detain, or arrest on some other legitimate basis if ‘reasonable suspicion exists that the person is an alien and is unlawfully present in the United States.’ ” Id.[13] It also provides that any person who is arrested shall have his immigration status determined by consultation with United States Immigration and Customs Enforcement (“ICE”) before he is released. Id. The Court noted that “[Consultation between federal and state officials is an important feature of the immigration system” and that ICE operates a 24-hour call center to answer queries from local, state and federal law enforcement agencies. Id., 132 S.Ct. at 2508. “The federal scheme thus leaves room for a policy requiring state officials to contact ICE as a routine matter.” Id. Recognizing that Section 2(B) is susceptible to several interpretations, some permissible and some preempted, the court ultimately declined to determine whether Section 2(B) is preempted by federal law:
There is a basic uncertainty about what the law means and how it will be enforced. At this stage, without the benefit of a definitive interpretation from the state courts, it would be inappropriate to assume § 2(B) will be construed in a way that creates a conflict with federal law.
Id., 132 S.Ct. at 2510. The Supreme Court thus held three sections of the Arizona Act, but not Section 2(B), preempted by federal immigration laws.
It was against this jurisprudential backdrop, in the wake of the Arizona decision, that the court of appeal issued its ruling in the instant case. As that court correctly recognized, pursuant to the Supremacy Clause, as the most recent pronouncement of the Supreme Court, the Arizona deei *462 sion is both binding on the courts of this state and controlling on the issue of federal preemption. As a result, 114both before the appellate court and now in this court, the parties center their arguments for and against preemption on which section of the Arizona Act La. R.S. 14:100.13 most closely resembles.
Not unexpectedly, the State insists that La. R.S. 14:100.13 is most analogous to Section 2(B) of the Arizona Act, the section of the Act the Supreme Court declined to find preempted. That section requires state officials to make a reasonable attempt to determine the immigration status of any person they stop, detain, or arrest on some other legitimate basis if reasonable suspicion exists that the person is not lawfully present. The State argues that La. R.S. 14:100.13 is distinguishable from the preempted Section '3 of the Arizona Act because criminal consequences under La. R.S. 14:100.13 are triggered by driving without documentation rather than by mere undocumented presence. The State asserts that La. R.S. 14:100.13 is not an “alien registration” statute, nor does it operate in the field of alien registration, because it does not require aliens to register with the State nor does it make an effort to keep track of aliens. Unlike Section 3 of the Arizona Act, La. R.S. 14:100.13 does not merely adopt the federal standard; neither does it exactly mirror federal law, as it does not require aliens to carry registration documents at all times. According to the State, the only way to find La. R.S. 14:100.13 preempted within the field of alien registration is to disregard the element of operating a motor vehicle, which no federal immigration law attempts to regulate. Relying on the well-established presumption against preemption,[14] the State argues that the “field” in which La. R.S. 14:100.13 actually operates is the regulation of roads, a police power traditionally reserved to 11sthe States, and that in the absence of a comprehensive scheme of federal driving regulations, a finding of field preemption is unwarranted.
Quite naturally, the defendant endorses the position adopted by the court of appeal. He argues that, like Section 3 of the Arizona Act, La. * R.S. 14:100.13 is field preempted because, in creating a state law penalty for the failure to carry documents proving one’s lawful presence in the United States, it also invades a field pervasively occupied by the federal government— that of alien registration. Drawing from the Arizona decision, he points out that the field of alien registration occupied by the federal government establishes requirements for registration and for carrying proof of compliance, and sets forth penalties for violation of these requirements:
Federal law now includes a requirement that aliens carry proof of registration. 8 U.S.C. § 1304(e).... Aliens who remain in the country for more than 30 days must apply for registration and be fingerprinted.... § 1302(a) ... Detailed information is required, and any change of address has to be reported to the Federal Government.... §§ 1304(a), 1305(a) ... The statute continues to provide penalties for the willful failure to register.... § 1306(a) ...
Arizona, 132 S.Ct. at 2502. He asserts that, as illustrated, Louisiana’s requirement that proof of lawful presence be carried is one component of the federally occupied field of alien registration.
Moreover, the defendant points out that every document Louisiana accepts as proof *463 of lawful presence is a federally issued alien registration document.[15] The 11ñdefendant discounts the argument that Louisiana’s law is distinguishable from Arizona’s because Arizona criminalized presence without documentation while Louisiana criminalizes driving without documentation. He notes that Arizona’s law is actually broader than Louisiana’s and argues that if the broader regulation is preempted, then the narroiuer regulation acting within the same field is equally vio-lative of federal preemption principles.
In the final analysis, in this post-Arizona era, the debate over whether La. R.S. 14:100.13 is preempted centers on whether the fact that Louisiana’s statute only criminalizes the failure to carry documents proving lawful presence in the United States while driving is sufficient to distinguish it from Section 3 of the Arizona Act that made it a state misdemeanor for failure to carry alien registration documents generally.[16]
| )7In an effort to escape principles of field preemption, the State argues that, because criminal liability only arises if a person operates a vehicle, La. R.S. 14:100.13 is merely an effort by the state to regulate driving on its roads and does not operate within the field of alien registration.[17] However, the State’s argument *464 ignores the fact that the statute only applies to aliens’, it requires the carrying of documentation — documentation which is neither directed at nor establishes competency to operate motor vehicles on the roads of this state and which consists, moreover, of documents defined by a state agency as consisting entirely of federal alien registration documents (see, e.g., La. Admin. Code tit. 55 § 147(E)(2007)) — and it punishes the failure to carry such documentation as a felony.
Federal law mandates that, once in the United States, aliens are required to register with the federal government and carry proof of status on their persons at all times (which necessarily includes while driving). See 8 U.S.C. §§ 1301-1306. Failure to do so is a federal misdemeanor. 8 U.S.C. §§ 1304(e), 1306(a). The Supreme Court ruled in Arizona that the comprehensive framework in which these provisions appear leads to the conclusion that the federal government has occupied the field of alien registration and that “[w]here Congress occupies an entire field, as 11sit has in the field of alien registration, even complementary state regulation is impermissible.” Arizona, 132 S.Ct. at 2502. Arizona thus instructs that states may not criminalize federal registration violations such as the failure to carry proof of alien registration. Id.[18]
In requiring aliens to carry documentation of their lawful presence while driving, La. R.S. 14:100.13 regulates squarely in the field of alien registration.[19] Although *465 no jurisdiction has considered whether a law like La. R.S. 14:100.13 is preempted,[20] the conclusion is inescapable that if a state cannot criminalize the failure to carry registration generally, neither may it criminalize the failure to carry registration while operating a vehicle.[21] The broader prohibition necessarily includes the narrower one.
Additionally, following the rationale of Arizona, it is clear that the harsh penalty provisions of La. R.S. 14:100.13 impermis-sibly intrude upon the federal [19scheme. Under federal law, the failure to carry registration papers is a misdemeanor, punishable by fíne, imprisonment, or a term of probation. See 8 U.S.C. § 1304(e); 18 U.S.C. § 3561. Louisiana R.S. 14:100.13, by contrast, punishes the failure to carry documentation as a felony with the possibility of a hard labor sentence of up to one year. We conclude, consonant with the Supreme Court in Arizona: “This state framework of sanctions creates a conflict with the plan Congress put in place,” and “underscorefe] the reason for field preemption.” Arizona, 132 S.Ct. at 2503.
Whereas, previously it may have been a closer question whether La. R.S. 14:100.13 is preempted (thus accounting for the in-tra-circuit split among the courts of appeal), after Arizona, it is clear that the federal government has occupied the field of alien registration and that, as a result, even complementary legislation by the states operating in that field is pre-empt-ed.[22] Because La. R.S. 14:100.13 operates in the field of alien registration as interpreted by the Supreme Court in Arizona, by regulating the circumstances under which non-citizens carry documentation establishing proof of lawful status, the statute is preempted under the Supremacy Clause of the U.S. Constitution, as interpreted by controlling federal jurisprudence.
DECREE
For the foregoing reasons, the decision of the court of appeal is affirmed. AFFIRMED.
VICTORY, Justice, dissents with reasons.
HUGHES, Justice, dissents with reasons.

. Counsel's characterization was a misnomer. Defendant clearly intended to enter a “Crosby plea,” which is a guilty plea conditioned upon review of the denial of designated pre-plea motions. State v. Crosby, 338 So.2d 584, 588-89 (La.1976). Despite the improper nomenclature, defense counsel made clear that he wished to preserve certain claims, which he expressly delineated. The State has voiced no objection to the improper designation.

. In addition to its application for supervisory review, the State filed a motion for appeal in the Third Circuit. However, this court has held that, for purposes of our appellate jurisdiction under La. Const, art. 5, § 5(D), a ruling that a state statute is preempted by federal law is not a declaration of unconstitutionality but a matter of statutory interpretation; therefore, review is by application for writ of certiorari rather than by appeal. City of Baton Rouge v. Goings, 95-2542, pp. 2-3 (La.12/13/96), 684 So.2d 396, 397-98. Moreover, although the State does not raise it as a procedural bar in this case, because a finding that a state statute is preempted by federal law is not a declaration of unconstitutionality, the procedural requirements imposed by this court on constitutional challenges to statutes or ordinances (see e.g., State v. Hatton, 07-2377, p. 13 (La.7/1/08), 985 So.2d 709, 718) do not apply to challenges based on the doctrine of federal preemption.

. These cases are resolved in separate opinions issued contemporaneously herewith.

. 2002 La. Acts, 1st Ex.Sess. 46 § 1.

. La. R.S. 14:100.12(2) defines an alien student as “any person who is attending an institution of education in the state who is not a citizen of the United States.”

. La. R.S. 14:100.12(5) defines a nonresident alien as "any person who is not a United States citizen and who is a citizen of any country other than the United States, who is physically present in the United States and who has not acquired INS permanent resident status.”

. Quoting Kaltenbach v. Breaux, 690 F.Supp. 1551, 1553 (W.D.La.1988)

. The relevant sections are presented in the order discussed in the Supreme Court's opinion.

. The Supremacy Clause, U.S. Const., art. VI, cl.2, provides, in relevant part:
This Constitution, and the Laws of the United States ... made in Pursuance thereof; and all Treaties made ... under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

. Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).

. Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

. Quoting Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137, 147, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002).

. Quoting Ariz.Rev.Stat. Ann. § 11 — 1051(B) (West 2012).

. Rice, 331 U.S. at 230, 67 S.Ct. 1146 ("[W]e start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.”).

. La. R.S. 14:100.12(3) defines documentation demonstrating lawful presence in the United States as a document "determined by the Department of Public Safety and Corrections pursuant to R.S. 32:409.l(A)(2)(d)(vi).” In turn, La. R.S. 32:409.1 (A)(2)(d)(vi) permits an alien residing in Louisiana, who lacks a social security number, to obtain a driver’s license after providing, inter alia, "a document demonstrating lawful presence in the United States.” This statute further provides that "[t]he list of acceptable documents demonstrating lawful presence shall be determined by the department.” Id. Finally, at the time the statute was passed, the administrative code defined a "proof of lawful presence document” as "a verifiable document used to establish the identity and lawful presence of an individual who does not have and is ineligible to obtain a Social Security number.” La. Admin. Code tit. 55, § 147(E)(2007).
The administrative code also provided the following list of "lawful presence documents”:
a.i. Arrival-Departure Record (1-94) (Class A-l, A-2, A-3, B-l, B-2, C-l, C-2, C-3, E-1, E-2, F-l, F-2, G-l, G-2, G-3, G-4, G-5, H-4, I, J-2, K-2, L-2, M-l, M-2, NATO 1-7, 0-3, P-4, R-2, S-5, S-6, S-7, TC, TD, Cuban/Haitian Entrant, Parolee);
ii. the form 1-94 cannot state "Employment Authorized;”
iii. if a foreign passport and Form 1-94 have been presented as primary or secondary document, that Form 1-94 is also an acceptable § 147.B document, but only if it fits the § 147.B description;
b. Visa Waiver Arrival-Departure Record (I-94W) (Class WB, WT);
c. Crewman's Landing Permit (I-95A);
d. Alien Crewman Landing Permit and Identification Card (1-184);
e. Nonresident Alien Canadian Border Crossing Card (1-185);
f. Nonresident Alien Mexican Border Crossing Card (1-186);
g. Nonresident Alien Border Crossing Card (1-586);
h. B-l/B-2 Visa/BCC (DSP-150).
La. Admin. Code tit. 55, § 147(B)(1)(2007).

. We find the State’s argument that La. R.S. 14:100.13 is most analogous to Section 2(B) of the Arizona Act unconvincing. According to the Supreme Court, Section 2(B), which requires state officers to make a reasonable attempt to determine the immigration status of any person they stop, detain or arrest on another legitimate basis if reasonable suspicion exists that the person is an alien and is unlawfully present in the United States, could likely survive a preemption challenge if interpreted by Arizona courts to “only require[] state officers to conduct a status check during the course of an authorized, lawful detention or after a detainee has been released." Arizona, 132 S.Ct. at 2509. Louisiana's statute goes far beyond this limited communication and sharing of information with ICE, and creates a state felony offense.

. In an effort to bolster its argument that La. R.S. 14:100.13 does not operate in the field of alien registration, the State argues that La. *464 R.S. 14:100.13 does not legislate upon illegal immigration because it does not require an alien to be in the United States illegally to face prosecution under the statute. The State insists the law applies to any alien, whether lawfully present or not, who fails to carry proof of lawful presence while driving. Thus, according to the State, the alien student or nonresident alien who inadvertently forgets to carry the designated documents while driving is subject to felony prosecution.
The State's interpretation of the sweep of La. R.S. 14:100.13 is dubious. The penalty provisions of the statute, La. R.S. 14:100.13(B) and (C), clearly indicate that the only persons who could be punished for violating Section (A) are those "without lawful presence.” Furthermore, La. R.S. 14:100.11(B) plainly declares the purpose of the legislation: “to make operating a motor vehicle in this state when not lawfully present in the United States a crime.”
However, whether the statute’s penalty provisions extend to lawfully present aliens who fail to carry the required documentation while driving or only to those alien students and nonresident aliens "without lawful presence,” Section (A) of the statute nonetheless seeks to regulate the circumstances under which non-citizens carry documentation proving lawful presence, placing it directly within the field of alien registration.

. The State's argument that La. R.S. 14:100.13 does not criminalize violation of federal laws because La. R.S. 14:100.13 and its federal counterpart, 8 U.S.C. § 1304(e), are not identical and, further, that 8 U.S.C. § 1304(e) is not implicated because it applies only to aliens who have registered with the federal government and defendant has not done so, is misplaced. Like the preempted Section 3 of the Arizona Act, La. R.S. 14:100.13 attempts to criminalize activity proscribed by 8 U.S.C. §§ 1304(e) and 1306(a) in that it either punishes an individual for failure to carry documents he was issued (§ 1304(e)) or it punishes an individual for failure to register and obtain the necessary documents to carry (§ 1306(a)). In either event, the statute operates in the preempted field of alien registration described in Arizona.

. It is no obstacle to this conclusion that the legislature intended the Louisiana statute to "complement federal efforts to uncover those who seek to use the highways of this state to commit acts of terror,” La. R.S. 14:100.11(B), as courts must look to the actual impact of a law rather than its stated purpose in defining the field in which it operates. Gade v. National Solid Wastes Management Ass'n, 505 U.S. 88, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992), quoting Napier v. Atlantic Coast Line R. Co., 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432 *465 (1926) (Preemption analysis turns, not on whether federal and state laws “are aimed at distinct and different evils,’’ but whether they “operate upon the same object.”).
Moreover, it is noteworthy, as the State concedes in brief to this court, that application of the statute has yet to yield the apprehension of anyone identified as a terrorist operating on the roadways of this State.

. Our independent research confirms that no other state has such a law.

. Louisiana requires proof of lawful presence before issuing a driver's license. However, the Supremacy Clause apparently presents no obstacle to Louisiana requiring proof of lawful presence before issuing a driver’s license, see, e.g., Arizona Dream Act Coalition v. Brewer, 945 F.Supp.2d 1049 (D.Ariz.5/16/13), 2013 WL 2128315, at *7-8. La. R.S. 32:409.1(A)(2)(d)(vi).

.Insofar as the requirement that aliens carry documents demonstrating proof of lawful status is concerned, the presumption against preemption on which the State, and earlier decisions of the First Circuit, relied to find no "clear and manifest purpose of Congress to effect a complete ouster of state power to regulate requirements for legal operation of a vehicle on public roads and highways within a state” (see, e.g., State v. Sanchez, 10-0016 at 6, 39 So.3d at 839), has been overcome by the ruling in Arizona; therefore, the presumption is unavailing to the State here.